**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **CHRISTOPHER MCCULLOUGH,** ) | |
| **#174 909** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 3:05-CV-1163-F** |
| ) | |
| **CHAMBERS COUNTY SHERIFF'S,** ) | |
| **OFFICE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' SPECIAL REPORT**

COME NOW Major Clay Stewart and Sgt. John Carmichael, Defendants in the above-styled

cause, and submit their Special Report to the Court.

**INTRODUCTION**

On December 8, 2005, Plaintiff filed his Complaint in the United States District Court for the

Middle District of Alabama.  On January 6, 2006, this Court ordered Defendants to file a Special

Report within forty days of the date of the order. Defendants requested a two-week extension, which

the District Court granted on February 15, 2006.  Therefore, the Special Report's due date is March 1,

2006.

Christopher McCullough, the Plaintiff, alleges that on November 11, 2005, he was being held

in the Chambers County Detention Facility in anticipation of a sentencing hearing. Plaintiff alleges that

he was returned to the William E. Donaldson State Prison on November 22, 2005.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff's Complaint is difficult to summarize and reference because it is more like a

chronology of events than a complaint.  Plaintiff has titled his "Complaint" as follows: <u>CRUEL AND</u>

UNUSUAL PUNISHMENT, UNECESSARY [SIC] USE OF FORCE AND ASSAULT 1ST

DEGREE." Complaint, p. 1. Plaintiff then described the events of November 11, 2005, which involved

Plaintiff's alleged statements to several Detention Facility employees regarding "his waiver of right to

be present at sentencing." (Complaint, p. 1.)

Plaintiff alleges that at some point Defendant, Maj Clay Stewart, entered G-Block, where

Plaintiff was housed and where Plaintiff had been explaining to other corrections officers and then to

Maj Stewart that he wanted to exercise "his waiver of right to be present at sentencing." (Complaint, p.

2.) Plaintiff alleges that Defendant, Sgt John Carmichael, then entered G-Block carrying a taser gun

and stating that: "Don't nobody refuse to go to court around here!" (Complaint, p. 2.) Plaintiff alleges

that as he stood inside Cell # 3, Maj Stewart told Sgt Carmichael to "shoot him." (Complaint, p. 3.)

Plaintiff alleges that he started shaking, fell to the floor, and began shouting to Sgt Carmichael to "cut

it off." (Complaint, p. 3.) Meanwhile, Plaintiff alleges that Sgt Carmichael continued to squeeze the

taser gun trigger, saying, "Are you going to go to court now?" (Complaint, p. 3.)

Plaintiff claims that he "felt complete pain all over" his body, that his heart beat extremely fast,

and that after the tasering, his body was numb. (Complaint, p. 3.) Plaintiff claims he saw a needle-like

object in his left arm after he was helped off the floor and that a corrections officer took it out of his

arm, leaving a hole that later healed up. (Complaint, p. 3.)

Plaintiff claims that "Rules of Criminal Procedure Rule 26.7," grants him the right to be present

at sentencing or not, based on his choice and that Defendants' use of force to ensure Plaintiff's

attendance at sentencing hearing was a violation of his right. (Complaint, p. 4.) Plaintiff seeks

$100,000,000.00 in money damages for pain and suffering and punitive damages. (Complaint, p. 4.)

Plaintiff also demands that Maj Clay Stewart, Sgt. John Carmichael, Corrections Officers Keishia

Leverett, Sgt. Lisa Davidson, Corrections Officer Mallard, and Corrections Officer Col Hancock each

take a polygraph test about the events alleged in Plaintiff's Complaint. (Complaint, p. 5.) Plaintiff also

asks for criminal charges to be filed against Maj Stewart and Sgt Carmichael for assault in the first degree and unnecessary use of force and for a fast and speedy trial. (Complaint, p. 5.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants Major Clay Stewart and Sgt John Carmichael deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit B, Affidavit of Clay Stewart, "C. Stewart aff." ¶ 10; Exhibit C, Affidavit of John Carmichael, "J. Carmichael aff." ¶ 7.) Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

Plaintiff, a state prison inmate at William E. Donaldson Correctional Facility, was held in the Chambers County Jail during his prosecution for burglary and theft and to await sentencing . (Exhibit A, Orders of Commitment/Inmate Release Sheet; Ex. B, C. Stewart Aff., ¶ 4, 5.)

### A.    Policy and Procedure Regarding Use of Force in Chambers County Jail

It is the policy of the Chambers County Jail that "[j]ail personnel may use force to the degree necessary in the enforcement of jail rules and regulations." (Exhibit H, Chambers County Jail and Procedure Directive No. D-112, "Use of Force;" Ex. B, C. Stewart aff. ¶ 4; Ex. C, J. Carmichael aff. ¶ 4.) The policy of the Chambers County Jail specifically forbids any member of the jail staff from blocking, denying, delaying, or otherwise obstructing an inmate's access to any court. (Ex. I, Chambers County Jail Policy and Procedure Directive No. F-104, "Access to the Courts.") The Chambers County Jail has a grievance procedure available for inmates complaining of jail conditions.

"It is the policy of the Chambers County Jail that inmates are permitted to submit grievances to the jail administration and that each grievance will be acted upon."

(Exhibit J, Chambers County Jail Directive No. F-102, "Inmate Grievances.")  The procedures for an inmate to file a grievance are listed in the above Directive.  Plaintiff did not make use of the Chambers County Jail Grievance Procedure in this matter. (Ex. B, C. Stewart aff., ¶ 13.)

### B.    Jail Records and Affidavits Show that

Plaintiff states in his Complaint that on November 22, 2005, he returned to the William E. Donaldson State Correctional Facility from which he had been sent to the Chambers County Jail. (Complaint, p. 5.)  Plaintiff was sent from William E. Donaldson for the specific purpose of attending his criminal trial for burglary and theft and sentencing hearing before Court. (Ex. A, Orders of Commitment/Inmate Release Sheet; C. Stewart aff. ¶s 4, 5.)

### C.    Events that Lead to Taser Firing at Plaintiff

On November 10, 2005, at approximately 8:30 or 8:40 a.m., while Corrections Officer ("CO") Wesley Mallard and Sgt Annie Lisa Davidson were performing morning cell inspections, they were radioed to bring the Plaintiff to booking, where he would be taken to court for his sentencing hearing. (Exhibit D, Wesley Mallard's affidavit, "Mallard aff., ¶ 5;" Exhibit E, Sgt Annie Lisa Davidson's affidavit, "Davidson aff., ¶ 5.") When informed of his need to get ready to go to court, Plaintiff took his clothes off, used foul language to demonstrate his displeasure, and told both CO Mallard and Sgt Davidson that he was not going to court. (Ex. D, Mallard aff., ¶ 5; Ex. E, Davidson aff., ¶ 5.) CO Mallard, Sgt Davidson, Lieutenant Leverett, and CO Hancock spent 20 to 30 minutes attempting to reason with Plaintiff by telling him that the judge was waiting and that his own desire to appear in court was the reason he had been sent from the state prison to the Chambers County Detention Facility. (Ex. D, Mallard aff., ¶ 5; Ex. E, Davidson aff., ¶ 5; Exhibit F, Lieutenant Lakesha Leverett's affidavit, Leverett aff., ¶ 6; Exhibit G, CO Teddy Hancock's affidavit, Hancock aff., ¶s 5, 6.) Plaintiff was told that the officers would dress him and take him to court if necessary. (Ex. F, Leverett aff., ¶ 7.)

At approximately 9:00 a.m., Major Stewart learned that Christopher McCullough refused orders to leave his cell and attend a court hearing, which was scheduled for 9:00 a.m. (Ex. B, Stewart aff., ¶ 7.) Major Stewart was told that the judge was waiting for Plaintiff. (Ex. B, Stewart aff., ¶ 7; Ex. C, Carmichael aff., ¶ 5.) Sgt. Johnny Carmichael, a Deputy with the Sheriff's Department, was in booking waiting to transport the Plaintiff to court. Major Stewart asked Sgt. Carmichael to go with him to Cell Block G to bring the Plaintiff to booking. (Ex. B, Stewart aff., ¶ 7; Ex. C, Carmichael aff., ¶ 5.)

Upon the arrival at G-Block of Major Stewart and Sgt Carmichael, Lt Leverett informed them that, after extensive attempts to reason with him, Plaintiff still refused to dress and attend his court hearing. Plaintiff stood outside his cell in his underwear. Plaintiff stated emphatically that he did not have to leave his cell if he did not want to, that no officer could make him attend court, and that no officer could make him get dressed. (Ex. B, Stewart aff., ¶ 8; Ex. C, Carmichael aff., ¶s 7, 9.) Major Stewart and Sgt Carmichael, as well as the other officers at the scene, advised Plaintiff that he should follow the officer's orders and get dressed to go to court. (Exs. B – G, all affidavits.) Plaintiff repeated his refusal to not get dressed or go to court and then entered his cell and stated he was not going anywhere unless the officers forced him. (Ex. B, Stewart aff., ¶ 8; Ex. C, Carmichael aff., ¶ 6; Ex. D, Mallard aff., ¶ 7; Ex. E, Davidson aff., ¶ 6; Ex. F, Leverett aff., ¶ 10; Ex. G, Hancock aff., ¶ 6.) Plaintiff took a defensive stance and balled his fists as if he was about to engage in a physical struggle with jail personnel, and his words were to the effect of: "You're gonna have to kill me to get me out of here," and "I don't have to go to court." No officer said to Plaintiff: "Where's he at," or "Nobody don't go to court here." (Carmichael aff., ¶ 6.)

Several corrections officers stated that they considered it their duty to ensure that they follow a judge's orders and ensure that inmates are allowed to exercise their constitutional right to attend hearings involving them. (Ex. B, Stewart aff., ¶ 9; Ex. C, Carmichael aff., ¶ 7; Ex. G, Leverett aff., ¶ 8.) It is not the experience of Chambers County Corrections Officers that inmates have a right not to

attend hearings at which they have a constitutional right to be present. (Ex. B, Stewart aff., ¶ 9; Ex.C, Carmichael aff., ¶ 7; Ex. F, Leverett aff., ¶ 8; Ex. I, "Access to Courts.") Before the tasing of the Plaintiff, neither Major Stewart nor Sgt Carmichael nor CO Hancock heard Plaintiff state that he was exercising his "right" to not be present at his sentencing hearing, nor did they hear him state that he had informed the court of this desire, nor did he ask for his attorney in order to exercise that "right." (Ex. B, Stewart aff., ¶ 9; Ex.C, Carmichael aff., ¶ 7; Ex. G, Hancock aff., ¶ 6.) Only Lieutenant Leverett remembers Plaintiff ever saying something about a "constitutional right," but that statement was made by Plaintiff before Major Stewart and Sgt Carmichael arrived at the scene. (Ex. F, Leverett aff., ¶ 6.)

**D.     Physical Location of Cell; Risk of Dangerous Fall by Plaintiff or Officers**

Plaintiff's cell was located on the second balcony level of G-Block. The railing, which is approximately 3 feet high, was only a couple of feet from the door of his cell, and the stairs were about fifteen (15) feet from his cell door. A fall from that level of G-Block onto the concrete floor could severely injure an inmate or corrections officer. Several corrections officers stated that it has been their experience that the introduction of the use of the taser, otherwise known as the Electro-Muscular Disruption System, in the Chambers County Detention Facility has prevented many injuries in the Chamber County Detention Facility. In fact, the Chambers County Detention Facility has experienced no injuries to inmates or corrections officers since its introduction in 2003. (Ex. B, Stewart aff., ¶ 10; Ex. C, Carmichael aff., ¶ 8; Ex. D, Mallard aff., ¶ 6; Ex. F, Leverett aff., ¶ 9; Ex. G, Hancock aff., ¶ 7.)

**E.     The Tasing of Plaintiff by Sgt Carmichael**

All corrections officers warned Plaintiff that if he did not comply, he would be tased. Sgt. Carmichael warned Plaintiff at least three times that he would shoot him with the taser, if he did not comply. After that, Sgt. Carmichael shouted "Tase, Tase," at least twice, and then Sgt. Carmichael shot the taser into Plaintiff's shirt and gave him a charge one time by pulling the trigger once. Plaintiff did

not yell, "Turn it off," while being tased. In fact, a person cannot speak while receiving a taser charge. (Ex. C, Carmichael aff., ¶ 9.) Corrections Officer Hancock and Lieutenant Leverett caught Plaintiff so that a fall would not injure him. (Ex. B, Stewart aff., ¶ 11; Ex. C, Carmichael aff., ¶ 9; Ex. D, Mallard aff., ¶ 7; Ex. G, Hancock aff., ¶ 6.) Plaintiff then stated that he would get dressed and go to court. (Ex. B, Stewart aff., ¶ 11; Ex. D, Mallard aff., ¶ 7.) CO Mallard and CO Hancock helped Plaintiff to get dressed. (Ex. B, Stewart aff., ¶ 11; Ex. C, Carmichael aff., ¶ 9; Ex. D, Mallard aff., ¶ 7; Ex. G, Hancock aff., ¶ 6.) Corrections Officer Hancock removed the probes from Plaintiff's skin; one had entered his arm. (Ex. B, Stewart aff., ¶ 11; Ex. C, Carmichael aff., ¶ 9; Ex. D, Mallard aff., ¶ 7; Ex. E, Davidson aff., ¶ 6; Ex. F, Leverett aff., ¶ 10; Ex. G, Hancock aff., ¶ 6.) Plaintiff was handcuffed, taken to the Nurse, who placed ointment and a band-aid on the taser probe entry point, and he was then taken to his sentencing hearing. (Ex. F, Leverett aff., ¶ 10.) After being tased, Plaintiff did not complain about any injuries, only the painful feeling that the tasing created. (Ex. B, Stewart aff., ¶ 11; Ex. C, Carmichael aff., ¶ 9; Ex. D, Mallard aff., ¶ 7; Ex. E, Davidson aff., ¶ 6; Ex. F, Leverett aff., ¶ 10; Ex. G, Hancock aff., ¶ 6.) Sgt. Carmichael did not tase Plaintiff more than once with a 5-second charge, and Sgt Carmichael did not say, "Are you ready to go to court now?" (Ex. B, Stewart aff., ¶ 11; Ex. C, Carmichael aff., ¶ 9; Ex. D, Mallard aff., ¶ 7; Ex. G, Hancock aff., ¶ 6.)

**F.     After the Tasing Incident**

Sgt Carmichael filed the required report for use of force in the jail. (Ex. H, "Chambers County Detention Facility Incident Report.") Sgt Carmichael took Plaintiff to his sentencing hearing. (Ex. B, Stewart aff., ¶ 11; Ex. C, Carmichael aff., ¶ 9; Ex. F, Leverett aff., ¶ 10.) Upon Plaintiff's return from his sentencing hearing, Sgt Carmichael heard for the first time the Plaintiff use the words, "legal right" or "constitutional right" to not attend his sentencing hearing. (Ex. C, Carmichael aff., ¶ 10.) There was no incident of tasing of the Plaintiff on November 11, 2005, which is the date alleged in Plaintiff's Complaint. (Exs. B – G, affidavits of all jail personnel.) Plaintiff did not file any type of grievance with

the Chambers County Detention Facility, formally or informally. (Ex. B, Stewart aff., ¶ 11; Ex. J, "Inmate Grievances.")

**II.    LAW**

    **A.    All Claims By Plaintiff Against Defendants Are Due to be Dismissed because Plaintiff Failed to Set Forth a Claim in his Pleading in "a short and plain statement of the claim showing that the pleader is entitled to relief" in Violation of Fed. R. Civ. P. 8, and Plaintiff's Complaint does not meet the heightened pleading standard imposed by Eleventh Circuit precedent.**

        **1.    Fed.R.Civ.P. 8.**

The Plaintiff has not followed Fed. R. Civ. P. 8 in that he has not stated his allegations in "a short and plain statement of the claim showing that the pleader is entitled to relief." This failure has prejudiced the Defendants because they do not know what claims against which they must defend themselves. In his Complaint, the Plaintiff gave an account of events that he alleges occurred on November 11, 2005, then he concluded by demanding $100,000,000.00 for pain and suffering and punitive damages, a polygraph of several corrections officers, the filing of criminal charges against two corrections officers, and a fast and speedy trial. (Complaint, pp. 4-5.) Plaintiff stated in his Complaint that he has "civil actions" against the named Defendants "for violating his constitutional rights to legal procedures of court proceeding's." (Complaint, p. 1.) Defendants are unsure exactly how to defend themselves against such allegations in such a Complaint, particularly when the right allegedly violated – to waive appearance at sentencing hearing – is merely an allowance to criminal defendants contained in a state court rule. Ala.R.Crim.P., Rule 26.7. Therefore, this particular violation of Plaintiff's "constitutional rights" is not a recognized constitutional violation in 42 U.S.C. § 1983 because it does not fit within a category involving "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Defendants glean from Plaintiff's Complaint only one potential claim under 42 U.S.C. § 1983: A claim of excessive force in violation of the U.S. Constitution's prohibition of cruel and unusual punishment. Eighth Amendment to the United States

Constitution; <u>State of La. Ex rel. Francis v. Resweber</u>, 329 U.S. 459 (1947) (the Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment).

In addition to the above, Plaintiff's requests for relief are, for the most part, not the type relief upon which a claim may be based. Plaintiff demands polygraphs and criminal prosecution of corrections officers, not relief that this Court would grant even if Plaintiff's Complaint contained valid claims under 42 U.S.C. § 1983. These demands do not fall within any of the remedies allowed by 42 U.S.C. § 1983, e.g., injunctive relief, attorney fees, compensatory damages, punitive damages, or nominal damages. Allowing some leeway to Plaintiff, who filed his Complaint pro se, perhaps he has mixed up his demands for certain types of evidence (polygraph), procedural rights (speedy trial), and possible remedies (criminal prosecution). A polygraph examination is an evidentiary matter, not a pleading issue. As for a criminal prosecution for assault in the first degree, the decision to prosecute or not prosecute is not something that Defendants can enforce. Even if it was, Defendants would be entitled to immunity. <u>See</u> <u>Rowe v. City of Fort Lauderdale</u>, 279 F.3d 1271, 1279 (11th Cir. 2002) (affirming that a "prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government"). Other than a speedy trial, something that Defendants also are not able to assure to Plaintiff, Defendants contend that Plaintiff is not entitled to any of those particular demands. Because there exists no liability under 42 U.S.C. § 1983, Defendants reserve the right to discuss appropriate money damages as demanded by Plaintiff.

Defendants contend that none of Plaintiff's claims are cognizable by this Court. However, if this Court was to construe the demand for an assault prosecution as a civil action for assault, of if Plaintiff was to amend his Complaint, Plaintiff would still not be entitled to relief because Defendants are entitled to sovereign immunity. See discussion in **F.,** *infra*.

### 2.    Heightened Pleading Standard.

Under the heightened pleading standard, "the plaintiff must provide a greater degree of factual specificity than is ordinarily necessary under the notice pleading approach of the Federal Rules of Civil Procedure. <u>Hunter v. District of Columbia</u>, 943 F.2d 69, 75 (D.C. Cir. 1991) (citation omitted)."

> "[T]his circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim. Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims."

<u>Swann v. S. Health Partners, Inc.</u>, 388 F.3d 834, 838 (11th Cir. 2004) (citing Laurie v. Ala. Court of Crim. Appeals, 256 F.3d 1266, 1275-76 (11th Cir. 2001), and <u>Kyle K. v. Chapman</u>, 208 F.3d 940, 944 (11th Cir. 2000), for the proposition that "the heightened pleading standard is only applicable in § 1983 suits against individuals for whom qualified immunity is available.").

### B.    All Claims by the Plaintiff against the Defendants in their Official Capacities must fail based on Eleventh Amendment Immunity and because they are not "persons" under 42 U.S.C.A. § 1983

The Plaintiff has not stated whether his claims against Sheriff Hayes and Glenda Hayes are in their official capacities or individual capacities. Therefore, Defendants analyze the Plaintiff's claims in light of both individual and official capacities based on the manner in which the Plaintiff has made allegations against them.

The Plaintiff's claims against the Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction, as such claims are barred by the Eleventh Amendment to the United States Constitution. <u>Parker v. Williams</u>, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Free v. Granger</u>, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Carr v. City of Florence, Ala.</u>, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity);

Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against the Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983; therefore, claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

### C.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint

#### 1.    Plaintiff has failed to exhaust all Administrative Remedies.

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Chambers County Jail.  (Exhibit A, Chambers County Jail Directive F-102, ""Inmate Grievances;" Exhibit , aff., ¶ .) Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  Neither the Jail Administrator nor any other corrections officer nor any records at the Chambers County Jail shows that Plaintiff filed any type of grievance about the allegations made the basis of his Complaint.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code §

41-9-60. The alter egos of the Sheriff of Chambers County, Corrections Officers, are state officers and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies), and Defendants are entitled to have Plaintiff's claims against them dismissed.

> **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered a more than *de minimis* physical injury as a result of the allegations in his Complaint.**

42 U.S.C. § 1997e(e), requires that an inmate suffer a physical injury in order to present viable claims of injury.

> "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .  In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002). See also Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999) (in which the Eleventh Circuit held "that in order to satisfy section 1997e(e) the physical injury must be more than *de minimis*, but need not be significant") (citing Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999)).  In Michenfelder v. Sumner, the 9th circuit considered the use of tasers not to be cruel and unusual, partly because "the taser is the preferred method for controlling prisoners because it is the "'least confrontational' when compared to the use of physical restraint, billy clubs, mace, or stun guns." Michenfelder v. Sumner, 860 F.2d 328, 335-36 (9th Cir. 1988).  Nevada's regulations, mentioned in that opinion, even use the

same situation that occurred in this case – "an inmate who refuses to leave his cell" – as an example of the appropriate use of the taser. <u>Michenfelder</u>, supra, at 335.

Plaintiff has alleged certain painful events happened as a result of the tasering, but nowhere does he allege any identifiable, specific physical injury. (Complaint, pp. 1-5.) Even in Plaintiff's concluding claims for relief for "pain and suffering and punitive damages," he identifies no specific injuries. (Complaint, pp. 4-5.) Nowhere does Plaintiff allege that he sought or asked for medical treatment while at the Chambers County Jail or after his return to William E. Donaldson State Correctional Facility. (Plaintiff's Complaint.)

**D.    Plaintiff's Claims are Due to be Denied Because the Defendants did not Violate a Constitutional Right Belonging to the Plaintiff, nor was there Pre-existing "*Clearly Established* Law."**

Plaintiff must meet two prongs in order to satisfy the Eleventh Circuit's standard for determining whether Plaintiff has made out a claim sufficient to overcome qualified immunity to which the Defendants are entitled.

**1.    Plaintiff's Claims are Due to be Denied Because he has not Stated a Constitutional Violation within his Complaint Sufficient to Overcome Defendants' Entitlement to Qualified Immunity.**

Based on U.S. Supreme Court precedent, the Eleventh Circuit has stated a two-part inquiry in determining whether a Plaintiff has overcome the qualified immunity to which a public official is entitled in the face of a § 1983 claim.

> "The defendants having established their eligibility for qualified immunity, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate. <u>Lee[ v. Ferraro</u>,] 284 F.3d [1188,] at 1194 [(11th Cir. 2002)],. This next step consists of a two-part inquiry, set forth in <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *First we ask, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' Id. If, assuming the plaintiff's allegations were true, no such right would have been violated, the analysis is complete.* However, if a constitutional violation can be made

> out on the plaintiff's facts, we then must determine 'whether, at the time
> of the incident, every objectively reasonable police officer would have
> realized the acts violated already clearly established federal law.'
> <u>Garrett v. Athens-Clarke County</u>, 378 F.3d 1274, 1278-79 (11th Cir.
> 2004) (citing <u>Saucier</u>, 533 U.S. at 201-02, 121 S.Ct. 2151, 150 L.Ed.2d
> 272)."

<u>Harris v. Coweta County, Ga.</u>, ___ F.3d ___, ___ (11th Cir. 2005) (emphasis added). Even assuming that Plaintiff's allegations are true, he has not demonstrated in those allegations that the Defendants applied unconstitutionally excessive force against him and that they thereby denied him "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Based on Plaintiff's Complaint alone, it is obvious that the Defendants considered force necessary because the Plaintiff, in refusing to attend his sentencing hearing, violated the rules of the Jail and created a dangerous and combative environment. (Complaint, pp. 1-3; Ex. B, Stewart aff., ¶s 8-11; Ex. C, Carmichael aff., ¶s 6-9.) The Defendants' affidavits show that Plaintiff, in refusing to attend his sentencing hearing, also used foul language, told the officers they would have to use force to get him to comply, was not clear in communicating what he thought was a "constitutional right," and presented the physical appearance that he was ready to fight any officer who tried to ensure his attendance at his sentencing hearing. (Exs. B-H.) On its face and even accepting for the moment that his allegations are true, the Defendants are entitled to have the claims against them dismissed.

Also, Defendants' affidavits establish that there was more to Plaintiff's actions than just verbal assertions of a right to waive his presence at his sentencing hearing. (Ex. B, Stewart aff.; Ex. C, Carmichael aff.; Ex. G, Leverett aff.) His attitude was clearly threatening to the corrections officers such that they considered use of the taser the only safe way to *safely* ensure that Plaintiff complied with the judge's order to have him attend the sentencing hearing and the officers' order for Plaintiff to get dressed to attend the hearing. Plaintiff has not met the first prong necessary to overcome the Defendants' entitlement to qualified immunity. (Exs. B-H.)

As for any implication in Plaintiff's Complaint that he had a constitutional right to not attend his criminal sentencing hearing, Defendants know of no such constitutional right. Plaintiff's recalcitrance in refusing to attend his sentencing hearing does not equate to a valid exercise of any type of recognized right under the "Constitution and laws." 42 U.S.C. § 1983. Plaintiff has the constitutional right to be present at his criminal sentencing hearing, but the right to waive attendance at a criminal sentencing hearing under Ala.R.Crim.P., Rule 26.7, is not a recognized constitutional right.[1] Even if Plaintiff's assertion sufficed as such a right, Plaintiff had not notified the court in which he was convicted of his desire to waive his sentencing hearing, nor did he inform the Chambers County Corrections Officers that he had notified the court or an attorney representing him that he wished to exercise a right to waive attendance at his sentencing hearing. His demand for his "right" under Ala.R.Crim.P., Rule 26.7, displayed obstreperousness and an implied threat of force, not a valid and reasonable exercise of rights (Ex. B, Stewart aff., ¶s 8, 9; Ex. C, Carmichael aff., ¶s 6-9.); therefore, the corrections officers' use of force was not excessive, and the officers' use of the taser to obtain Plaintiff's compliance in attending the sentencing hearing before the judge did not constitute the denial of a constitutional right.

> **2. Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law**

Even if Plaintiff had met his burden with respect to the first prong, he still has not met his burden under the second prong of the analysis required for overcoming a public official's qualified immunity. Public officials, like Defendants here, are protected in their individual capacities by qualified immunity as long as "a reasonable officer could have believed [his actions] to be lawful, in light of *clearly established law* and the information [that the officer] possessed." Anderson v. Creighton, 483 U.S. 635, 636 (1987)

---

[1] A search of the ALLFEDS database of Westlaw using the search terms "waiv! /s sentenc! /2 (attend! or presen!) and 's 1983'" did not reveal any cases even implying such an exercise as a constitutional right.

(emphasis added). The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).

The Eleventh Circuit has divided consideration of qualified immunity into two "prongs" of analysis as articulated in Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983).

> First, "the defendant government official must prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Sammons v. Taylor, 967 F.2d 1533, 1539 (11th Cir. 1992) (quoting Zeigler, 716 F.2d at 849). "[T]hen the burden shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law." Id. (quoting Zeigler, 716 F.2d at 849).

Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994). Once it is established that the Plaintiff has stated a claim and that the Defendants were acting within their discretionary authority, the Court then considers whether the contours of the constitutional right allegedly violated were "clearly established." In making this assessment, the reviewing court must examine the state of law *at the time the alleged deprivation occurred*. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994); Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1578 (11th Cir. 1992) (Edmondson, J., dissenting), rev'd and reasoning of original dissent adopted, 998 F.2d 923 (11th Cir. 1993) (en banc).

Not only must the "clearly established" law pre-date the subject incident, the law must be relatively "fact specific" and "so particularized" that it would have been obvious or "apparent" to the defendant that his actions were unlawful. See Rodgers, 39 F.3d at 311; Hansen v. Soldenwagner, 19 F.3d 573, 575 (11th Cir. 1994) (both reversing denial of qualified immunity). As the Eleventh Circuit has explained, "[a] plaintiff cannot rely on . . . 'broad legal truisms' to show that a right is clearly established. . . . '[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994) (reversing denial of qualified immunity as to some defendants) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557

16

(11th Cir. 1992)).  While the facts of prior cases establishing the law in a particular context need not be identical, "the salient question that the Court of Appeals ought to have asked is whether the state of the law in 1995 gave respondents fair warning that their alleged treatment of [Plaintiff] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508 (2002).  This case law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Hudson v. Hall, 231 F.3d 1289, 1294 (11th Cir. 2000) (quoting Lassiter, at 28 F.3d 1150).

Qualified immunity recognizes the need for public officials to be immune not only from liability but from the litigation process itself. The Eleventh Circuit began applying the heightened pleading standard in qualified immunity cases against government officials "to weed out nonmeritorious claims." See GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).  Corrections officers deal with criminals on a regular basis and must make "snap" decisions to prevent danger and injury to an inmate and others around that inmate; thus, their judgment in a particular situation should not be analyzed too strictly by courts that have the benefit of hindsight. Hudson v. McMillian, 503 U.S. 1, 6 (1992) (prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline").  It is possible for a taser, like any weapon of force, to be used excessively and in an unconstitutional manner to get an inmate to obey orders as the Eleventh Circuit found in Brown v. Thompson, ___ F.3d ___, ___ (11th Cir. 2005), where dismissal of the plaintiff's complaint was reversed on appeal because the corrections officers "repeatedly stunned Brown with a stun gun to prod him to obey orders." Distinct from the case at bar, the officers in that case also "knew that Brown was unable to comply with their orders." Brown, ___ F.3d at ___, supra. Also, the Brown case was not reported until December 14, 2005, over a month after the incident alleged by Plaintiff in the case at bar.  Therefore, even if the facts of Brown were materially similar to the facts of the case at

bar, which they are not, the Defendants in this case could not have used that precedent to inform themselves that such conduct is unconstitutional, particularly when <u>Brown</u>, supra, was at the Motion to Dismiss stage. <u>See</u> <u>Vinyard v. Wilson</u>, 311 F.3d 1340 (11th Cir. 2002) ("When fact-specific precedents are said to have established the law, a case that is fairly distinguishable from the circumstances facing a government official cannot clearly establish the law for the circumstances facing that government official; so, qualified immunity applies.").  Also, in <u>Brown</u>, the corrections officers knew that the plaintiff could not comply with their orders; therefore, it is possible their actions were malicious or cruel.  There is no allegation in Plaintiff's Complaint in the case at bar that that Plaintiff could not comply or that the Defendants knew or thought that Plaintiff could not comply. (Complaint.)

As for whether Plaintiff had a "clearly established" right to waive his sentencing hearing and whether Defendants should have known that they should not deny such right, Defendants discussion of that issue in the previous section suffices to demonstrate that there was at the time of the alleged incident and there is now no "*clearly established law*" that the Defendants crossed as to that claim, much less any law pre-dating the alleged incident.  Therefore, any implied claim in Plaintiff's Complaint as to a "constitutional" right to not attend his sentencing hearing is due to be dismissed.

> "'Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.' Id. Whether a defendant official has violated a constitutional right at all is, of course, 'a "necessary concomitant" to the question of qualified immunity: if a defendant has not violated the law at all, he certainly has not violated clearly established law.'"

<u>Rodriguez v. Farrell</u>, 280 F.3d 1341, 1345 (11th Cir. 2002) (quoting <u>Hudson v. Hall</u>, 231 F.3d 1289, 1294 (11th Cir. 2000) (quoting <u>GJR Investments, Inc. v. County of Escambia</u>, 132 F.3d 1359, 1366-67 (11th Cir. 1998))).

The evidence clearly shows that Defendants have not violated a constitutional right of the Plaintiff. However, even if their acts could be construed as violating a right of the Plaintiff, the

Defendants have done nothing to cross any bright line of clearly established constitutional law. Therefore, they are entitled to qualified immunity.

> **E.    The Plaintiff's state law claims are due to be dismissed as a matter of law because defendants are entitled to absolute sovereign immunity and this Court lacks jurisdiction to hear the Plaintiff's state law claims.**

These claims should be dismissed for two reasons. First, *all* of the Plaintiff's state law claims against the Defendants fail because they are entitled to absolute sovereign immunity. Second, the Eleventh Amendment to the United States Constitution deprives this Court of jurisdiction to hear the Plaintiff's state law claims.

> **1.    Defendants Are Entitled to Sovereign Immunity.**

The Defendants, in their individual capacities, are absolutely immune to all of the Plaintiff's state law claims. Under Alabama law, each county sheriff is an executive officer of the State. See Article V, § 112 of the Alabama Constitution; McMillian v. Monroe County, Ala., 520 U.S. 791, 793 (holding that an Alabama sheriff represents the State of Alabama when executing law enforcement duties). A sheriff's deputies are similarly considered executive officers of the State. See Hereford v. Jefferson County, 586 So. 2d 209, 210 (Ala. 1991); Carr v. City of Florence, Ala., 916 F.2d 1521, 1525-26 (holding that, under Alabama law, a deputy is legally an extension of the sheriff). As executive branch, constitutional officers of the State, the Defendants are immune from suit under Article I, § 14 of the Alabama Constitution of 1901. This section immunizes Defendants from *all* state law claims, including constitutional claims, even though sued in their individual capacities. Tinney, 77 F.3d 378, 383 (holding sheriff and deputy sheriff were entitled to state sovereign immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1431 (11th Cir. 1998) (holding sheriff and jailers were entitled to sovereign immunity); Parker v. Amerson, 519 So. 2d 442, 445 (1987) (holding the Sheriff immune from suit although sued "individually, and as Sheriff"); Hereford v. Jefferson County, 586 So.2d at 210; King v. Colbert County, 620 So. 2d 623, 626 (Ala. 1993); Carr, 916 F.2d at 1525-26; Ex parte

Purvis, 689 So. 2d 794 (Ala. 1996) (holding sheriff and deputy were entitled to sovereign immunity in both their individual and official capacities); Ex parte Haralson, 871 So. 2d 802, 807 (Ala. 2003) (holding deputy sheriff entitled to sovereign immunity); Ex parte McWhorter, 880 So. 2d 1116, 1117 (Ala. 2003) (holding deputy sheriff entitled to sovereign immunity). Consequently, all of the Plaintiff's state law claims against the Defendants are due to be dismissed.

   2.   **The Eleventh Amendment to the United States Constitution also bars Plaintiff's state law claims.**

   The Plaintiffs' state law claims are also due to be stricken for lack of subject matter jurisdiction. As discussed above, Defendants are executive officers of the State of Alabama. As such, any claims brought against them are claims against the State. The Eleventh Amendment bars any claims, including state law claims, brought against a state or its officials in the absence of state consent. See Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984) (holding the Eleventh Amendment barred state law claims brought in district court under pendent jurisdiction). The Plaintiff has not alleged a waiver of immunity nor has the State consented to this suit. Consequently, this Court lacks jurisdiction over the Plaintiff's claims and they are due to be dismissed.

   F.   **Summary Judgment Standard**

   On a motion for summary judgment, the Court should view the evidence in the light most favorable to the nonmovant. Greason, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves,

530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[2]

"A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc), quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## III.    CONCLUSION

Defendants Clay Stewart and John Carmichael deny each and every allegation made by Plaintiff Christopher McCullough in the Complaint.  Defendants have not acted in a manner so as to deprive the Plaintiff of any right to which he is entitled.

## IV.    MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this the 24th day of February, 2006.

s/Winthrop E. Johnson
WINTHROP E. JOHNSON, Bar No. JOH086
Attorney for Defendants Clay Stewart
and John Carmichael
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  ccornelius@webbeley.com

---

[2] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## CERTIFICATE OF SERVICE

I hereby certify that on this the 24th day of February, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Christopher McCullough, #174 909
W.E. Donaldson Correctional Facility
100 Warrior Lane
Bessemer, AL  35203

**s/Winthrop E. Johnson**
OF COUNSEL