# EXHIBIT
# A

| State of Alabama Unified Judicial System | ORDER OF COMMITMENT TO JAIL | Case Number |
|---|---|---|
| Form C-41    Rev. 11/92 | | CC-05-395 |

IN THE _Circuit_ COURT OF _Chambers Co._ ALABAMA
(Circuit, District, or Municipal)          (Name of Municipality or County)

☑ STATE OF ALABAMA    ☐ MUNICIPALITY OF _____

v. _Christopher McCullough_ , Defendant

TO THE JAILER OF _Chambers Co. Detention_

You are ordered to receive into your custody the above-named defendant, charged with the

offense(s) of _Burglary 1°_
_Theft 1°_

until he/she is legally discharged from your custody by this court.

Reason(s) for Commitment: _Jury Verdict Guilty Burglary 2nd Degree & T.O.P. 1st Degree._

Sentence: _Return 9:00 Am on 11-10-05_

| Date Sentenced | Jail Credit | Date Sentence Begins |
|---|---|---|
| | | |

_11/9/05_
Date

_[signature]_
Judge/Clerk/Magistrate

| State of Alabama<br>Unified Judicial System<br><br>Form C-41    Rev. 11/92 | ORDER OF COMMITMENT TO JAIL | Case Number<br><br>CC 02-35 |
|---|---|---|

IN THE _____ COURT OF __Chambers__ ALABAMA
_(Circuit, District, or Municipal)_    _(Name of Municipality or County)_

☐ STATE OF ALABAMA    ☐ MUNICIPALITY OF _____

v. ___Christopher McCullough___ , Defendant

---

TO THE JAILER OF ___Chambers___

You are ordered to receive into your custody the above-named defendant, charged with the offense(s) of __Burglary 3rd  Theft of Property 1st__

until he/she is legally discharged from your custody by this court.

Reason(s) for Commitment: __Guilty By Jury Verdict.__

__Burglary 3rd  20 YEARS  Concurrent with Each__
__Thft 1st  25 YEARS  But consecutive with__

Sentence: ___ __All Previous Sentences.__

__Plus Allcost & Restitution.__

| Date Sentenced<br>11-10-2005 | Jail Credit<br>By time Alrea.<br>SErv. | Date Sentence Begins<br>11-10-2005 |
|---|---|---|

_11-10-2005_  AP

_____    _____
Date    Judge/Clerk/Magistrate

```
                              CHAMBERS CO. SHERIFF'S OFFICE
11/22/2005    05:20:50          INMATE RELEASE SHEET                      PAGE    1
================================================================================
BOOKING NO: 050001888

INMATE NAME: MCCULLOUGH CHRISTOPHER CORNELIUOS
        ALIAS:
        ALIAS:                                    RACE: B      SEX: M
      ADDRESS: 135 S 18TH STREET                   HT: 5'01"  HAIR: BLK
   CITY/ST/ZIP: LANETT, AL 36854                   WT: 150    EYES: BRO
   HOME PHONE: 334-644-1752                   COMPLEX: DRK
         DOB: 11/27/1972    AGE:  32              SSN: 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
   PLCE BIRTH: LANGDALE                         DL ST: AL      DLN: 695692
        STATE: AL                                 SID: 174909/233276
   M. STATUS:                                   LOCID: 6847
     RELIGION: BAPT
  GANG ASSOC:
 SCARS/TATTOOS: TAT ON LEFT AND RIGHT ARM , STOMACH
KNOWN ENEMIES:
      REMARKS:
------------------------------ NEXT OF KIN ------------------------------------
  NEXT OF KIN: DENISE MCCULLOUGH
      ADDRESS: 18A BOYD CIR                  RELATIONSHIP: SISTER
  CITY/ST/ZIP: VALLEY, AL 36854                     PHONE: 334-756-5147
      REMARKS:
------------------------------ EMPLOYER INFO ----------------------------------
     EMPLOYED: Y
EMPLOYER NAME: CARTER MILL
      ADDRESS:
  CITY/ST/ZIP: VALLEY, AL 36854
        PHONE: 706-645-7219
------------------------------ MEDICAL ----------------------------------------
  HANDICAPPED: N   NEEDS:
      GLASSES: N   SMOKE: N
MEDICAL NEEDS: N   NEEDS:
    PHYSICIAN:                        PHONE: 000-000-0000
      REMARKS:

      REMARKS:
      REMARKS:
------------------------------ PROPERTY ---------------------------------------
         CASH:        $00.00
  DESCRIPTION:
ADD. PROPERTY: BAG OF CLOTHES
ADD. PROPERTY:
ADD. PROPERTY:
   BIN NUMBER: 083
VEH IMPOUNDED:
  IMPOUND LOT:
      REMARKS:
      REMARKS:
================================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE: X Christ McCillow      DATE: _____    TIME: _____

BOOK OFFICER: C/o Brown        DATE: _____    TIME: _____
```



```
                         CHAMBERS CO. SHERIFF'S OFFICE
11/22/2005      05:20:50     INMATE RELEASE SHEET                    PAGE    2
===============================================================================
BOOKING NO: 050001888     INMATE NAME: MCCULLOUGH CHRISTOPHER CORNELIUOS
===============================================================================
          COURT: CIR                ATTORNEY ON REC:
          JUDGE:                         PHONE: 000-000-0000
        REMARKS:
        REMARKS:
-------------------------------------------------------------------------------
     BOOK DATE: 11/04/2005  BOOK TIME: 18:06  BOOK TYPE: NORMAL

    ARREST DATE: 11/04/2005      BOOKING OFFICER: TEODORO
    ARREST DEPT: CCSD            CELL ASSIGNMENT:
   ARRST OFFICER: ROLLINS           MEAL CODE: 01  CHAMBERS COUNTY
   PROJ. RLSDATE: 00/00/0000         FACILITY: 01  COUNTY JAIL
   SEARCH OFFCR: TEODORO       CLASSIFICATION: FELONY
    TYPE SEARCH: STRIP           WORK RELEASE: N
  INTOX RESULTS:

          HOLDS: Y
         AGENCY: DOC            REASON:
         AGENCY:                REASON:
         AGENCY:                REASON:
         AGENCY:                REASON:

          NOTES:
          NOTES:
          NOTES:
===============================================================================
  RELEASE DATE: 11/22/2005  RELEASE TIME: 05:20    # DAYS SERVED:    19

RELEASE OFFICER: BROWN L
   RELEASE TYPE: D.O.C.
        REMARKS: TRANSPORTED BACK TO D.O.C.
        REMARKS:
        REMARKS:
===============================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE: _Chris McCullough_      DATE: _____    TIME: _____

BOOK OFFICER: _C/O Brown_       DATE: _____    TIME: _____
```

```
                              CHAMBERS CO. SHERIFF'S OFFICE
11/22/2005     05:20:50       INMATE CHARGE SHEET                          PAGE     3
=====================================================================================
BOOKING NO: 050001888        INMATE NAME: MCCULLOUGH CHRISTOPHER CORNELIUOS
=====================================================================================
   CHARGE NO:   1 DISPOSITION: RELEASED           HOLD: N

ALA STATUTE:                          # OF COUNTS:   1
     OFFENSE: JUDICAL ORDER           WARRANT #:
        CASE #:
    BOND AMT: NO BOND                              FINE:        $0.00
    BAIL AMT:
INIT APPEAR: 00/00/0000           SENTENCE DATE: 00/00/0000
RELEASE DTE: 11/22/2005
ARREST DATE: 11/04/2005           ARST AGENCY: CCSD
ARST OFFICR: ROLLINS                  COUNTY: CHAMBERS
       COURT: CIR                       JUDGE:
DEF ATTORNY:                      DIST ATTORNEY:
    COMMENTS:
    COMMENTS:
    COMMENTS: INMATE RELEASED BY C3363
-------------------------------------------------------------------------------------
   CHARGE NO:   2 DISPOSITION: SENTENCED          HOLD: N

ALA STATUTE:                          # OF COUNTS:   1
     OFFENSE: BURGLARY 1ST            WARRANT #:
        CASE #: CC-02-000325
    BOND AMT: 20 YEARS CC                          FINE:        $0.00
    BAIL AMT:
INIT APPEAR: 00/00/0000           SENTENCE DATE: 11/09/2005
RELEASE DTE: 00/00/0000
ARREST DATE: 11/09/2005           ARST AGENCY: CCSD
ARST OFFICR: CARMICHAEL                COUNTY: CHAMBERS
       COURT: CIR                       JUDGE: YOUNG
DEF ATTORNY:                      DIST ATTORNEY:
    COMMENTS: JURY VERDICT GUILTY
    COMMENTS: 20 YEARS CC WITH EACH BUT CONSECUTIVE WITH PREVIOUS SENTENCE
    COMMENTS: PLUS ALL COST AND RESTITUTION.
-------------------------------------------------------------------------------------
   CHARGE NO:   3 DISPOSITION: SENTENCED          HOLD: N

ALA STATUTE:                          # OF COUNTS:   0
     OFFENSE: THEFT 1ST               WARRANT #:
        CASE #: CC-02-000325
    BOND AMT: 25 YEARS                             FINE:        $0.00
    BAIL AMT:
INIT APPEAR: 00/00/0000           SENTENCE DATE: 11/09/2005
RELEASE DTE: 00/00/0000
ARREST DATE: 11/09/2005           ARST AGENCY: CCSD
ARST OFFICR: CARMICHAEL                COUNTY: CHAMBERS
       COURT: CIR                       JUDGE: YOUNG
DEF ATTORNY:                      DIST ATTORNEY:
    COMMENTS: JURY VERDICT GUILTY
    COMMENTS: 25 YEARS CC BUT CONSECUTIVE WITH ALL PREVIOUS SENTENCES
    COMMENTS: PLUS ALL COST AND RESTITUTION
-------------------------------------------------------------------------------------
```

```
                              CHAMBERS CO. SHERIFF'S OFFICE
11/22/2005     05:20:50         INMATE CHARGE SHEET                    PAGE    4
===============================================================================
BOOKING NO: 050001888         INMATE NAME: MCCULLOUGH CHRISTOPHER CORNELIUOS
===============================================================================
```

```
11/04/2005     18:08:58      CHAMBERS CO. SHERIFF'S OFFICE
                             INMATE BOOKING SHEET                    PAGE    1
===============================================================================
BOOKING NO: 050001888

INMATE NAME: MCCULLOUGH CHRISTOPHER CORNELIUOS
      ALIAS:
      ALIAS:                                    RACE: B      SEX: M
    ADDRESS: 135 S 18TH STREET                  HT: 5'01"  HAIR: BLK
CITY/ST/ZIP: LANETT, AL 36854                   WT: 150    EYES: BRO
 HOME PHONE: 334-644-1752              COMPLEX: DRK
        DOB: 11/27/1972   AGE:  32             SSN: 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
 PLCE BIRTH: LANGDALE                       DL ST: AL      DLN: 695692
      STATE: AL                               SID: 174909/233276
  M. STATUS:                                 LOCID: 6847
   RELIGION: BAPT
 GANG ASSOC:
SCARS/TATTOOS: TAT ON LEFT AND RIGHT ARM , STOMACH
KNOWN ENEMIES:
    REMARKS:
------------------------------- NEXT OF KIN -----------------------------------
 NEXT OF KIN: DENISE MCCULLOUGH            RELATIONSHIP: SISTER
     ADDRESS: 18A BOYD CIR                        PHONE: 334-756-5147
 CITY/ST/ZIP: VALLEY, AL 36854
     REMARKS:
----------------------------- EMPLOYER INFO -----------------------------------
    EMPLOYED: Y
EMPLOYER NAME: CARTER MILL
     ADDRESS:
 CITY/ST/ZIP: VALLEY, AL 36854
       PHONE: 706-645-7219
------------------------------- MEDICAL ---------------------------------------
 HANDICAPPED: N   NEEDS:
     GLASSES: N   SMOKE: N
MEDICAL NEEDS: N   NEEDS:
   PHYSICIAN:                          PHONE: 000-000-0000
     REMARKS:

     REMARKS:
     REMARKS:
------------------------------- PROPERTY --------------------------------------
        CASH:        $00.00
 DESCRIPTION:
ADD. PROPERTY: BAG OF CLOTHES
ADD. PROPERTY:
ADD. PROPERTY:
  BIN NUMBER: 083
VEH IMPOUNDED:
 IMPOUND LOT:
     REMARKS:
     REMARKS:
===============================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE: _____ DATE: _____  TIME: _____

BOOK OFFICER: _____  DATE: _____  TIME: _____
```

```
                        CHAMBERS CO. SHERIFF'S OFFICE
11/04/2005    18:08:58      INMATE BOOKING SHEET                   PAGE    2
=============================================================================
BOOKING NO: 050001888      INMATE NAME: MCCULLOUGH CHRISTOPHER CORNELIUOS
=============================================================================
            COURT: CIR                ATTORNEY ON REC:
            JUDGE:                        PHONE: 000-000-0000
          REMARKS:
          REMARKS:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
     BOOK DATE: 11/04/2005    BOOK TIME: 18:06   BOOK TYPE: NORMAL

    ARREST DATE: 11/04/2005      BOOKING OFFICER: TEODORO
    ARREST DEPT: CCSD            CELL ASSIGNMENT: G-DAYROOM
  ARRST OFFICER: ROLLINS              MEAL CODE: 01   CHAMBERS COUNTY
  PROJ. RLSDATE: 00/00/0000            FACILITY: 01   COUNTY JAIL
  SEARCH OFFCR: TEODORO           CLASSIFICATION: FELONY
   TYPE SEARCH: STRIP              WORK RELEASE: N
 INTOX RESULTS:


          HOLDS: Y
         AGENCY: DOC          REASON:
         AGENCY:              REASON:
         AGENCY:              REASON:
         AGENCY:              REASON:


          NOTES:
          NOTES:
          NOTES:
```

```
                          CHAMBERS CO. SHERIFF'S OFFICE
11/04/2005      18:08:58        INMATE CHARGE SHEET                 PAGE    3
===============================================================================
BOOKING NO: 050001888       INMATE NAME: MCCULLOUGH CHRISTOPHER CORNELIUOS
===============================================================================
   CHARGE NO:   1  DISPOSITION: OPEN               HOLD: N

ALA STATUTE:                        # OF COUNTS:   1
    OFFENSE: JUDICAL ORDER          WARRANT #:
      CASE #:
    BOND AMT: NO BOND                   FINE:       $0.00
    BAIL AMT:
INIT APPEAR: 00/00/0000
RELEASE DTE: 00/00/0000          SENTENCE DATE: 00/00/0000
ARREST DATE: 11/04/2005
ARST OFFICR: ROLLINS              ARST AGENCY: CCSD
      COURT: CIR                       COUNTY: CHAMBERS
DEF ATTORNY:                            JUDGE:
   COMMENTS:                      DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
-------------------------------------------------------------------------------
```

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

STATE OF ALABAMA                    )
                                    )    CC 02·312
VS.                                 )       02· 325
                                    )
CHRISTOPHER MCCULLOUGH              )

<u>ORDER</u>

The Chambers County Sheriff's Department is hereby **ORDERED** to obtain custody of the above witness in the above styled case from Department of Corrections and transport him to the Chambers County Detention Facility and maintain custody of him until such time as he appears in this matter on November 07, 2005 AT 9:00 AM CST.

It is further **ORDERED** that at the conclusion of the trial the Chambers County Sheriff's Department shall transport Christopher McCullough to the location from which he was obtained.

Done this 18th day of October, 2005.

_____
Tom F. Young
Circuit Judge



A 15
Donaltson

FILED IN OFFICE THIS
OCT 21 2005
CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

6 847

# IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

STATE OF ALABAMA,　　　　　　 )
　　　　Plaintiff,　　　　　　　　 )
　　　　　　　　　　　　　　　　 )
vs.　　　　　　　　　　　　　　 )　　 Case No. CC-02-312 & 325
　　　　　　　　　　　　　　　　 )
CHRIS McCULLOUGH,　　　　　　 )
　　　　Defendant.　　　　　　　 )

## O R D E R

It has been brought to the attention of the Court that the defendant named above may be presently incarcerated with the Department of Corrections, and said defendant must be before this Court on November 7, 2005.

IT IS ORDERED that the Chambers County Sheriff's Office make arrangements with the Department of Corrections to transport the said defendant to this Court for hearing on the date and time indicated above. IT IS FURTHER ORDERED that the Department of Corrections deliver custody of the Defendant to personnel of the Chambers County Sheriff's Office for the purpose of transporting defendant to this County for hearing. After said hearing, the Chambers County Sheriff's Office is directed to return the Defendant to the custody of the Department of Corrections.

The Clerk of the Court is to mail a copy of this Order to the Office of the District Attorney, counsel for the Defendant, the Chambers County Sheriffs' Office and the Department of Corrections.

SIGNED this 25th day of October, 2005.

_____
TOM F. YOUNG, JR.
Circuit Judge

FILED OFFICE THIS

2 7 2005

W. STO____
CLERK
CH____ ____TY, ALABAMA

# EXHIBIT
# B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHRISTOPHER MCCULLOUGH,      )
                             )
      Plaintiff,             )
                             )
v.                           )      Civil Action No.  3:05-CV-1163-F
                             )                        (WO)
CHAMBERS COUNTY SHERIFF'S    )
DEPARTMENT, et al.,          )
                             )
      Defendants.            )

## AFFIDAVIT OF CLAY STEWART

STATE OF ALABAMA        )
                        )
COUNTY OF CHAMBERS      )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Clay Stewart, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Clay Stewart.  I am over the age of nineteen and competent to make this affidavit.  I have been employed by the Chambers County Sheriff's Department since 1995.  On October 31, 2005, I became the Jail Administrator of the Chambers County Jail.

2.      I am familiar with the Plaintiff Christopher McCullough due to his incarceration in the Chambers County Jail.

3.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.      I certify and state that the documents provided to the Court which are attached to the Defendant's Special Report are true and correct copies of inmate records,

kept at the Chambers County Jail in the regular course of business. I am the Custodian of these Records.

5.     Christopher McCullough was transferred from William E. Donaldson State Correctional Facility to the Chambers County Detention Facility on November 4, 2005, for trial for Burglary and Theft. He was tried and convicted on November 9, 2005 of Burglary First Degree and Theft First Degree. He was scheduled for a Sentencing Hearing on November 10, 2005, and he was transferred back to William E. Donaldson Correctional Facility on November 22, 2005.

6.     The Chambers County Detention Facility Policy and Procedures Directives, 18 June 1991, state our policy regarding Use of Force in Directive # D-112. Jail personnel may use force for the enforcement of county jail rules and for the prevention of injury to officers and inmates. Use of Force in Directive # D-112, para. 1.a., 1.b., & 1.e. Guidelines to be followed in any situation are: Reasonable attempts to deal with situation before using force; if possible, advise Shift Supervisor or Jail Administrator of situation; only physical force necessary for particular situation should be used; and as soon as inmate is subdued, restrained or stopped in his actions, discontinue force. Use of Force in Directive # D-112, para. 2. Those steps were followed with regard to the Plaintiff.

7.     On November 10, 2005, at approximately 9:00 a.m., I learned that Christopher McCullough refused orders to leave his cell and attend a court hearing, which was scheduled for 9:00 a.m. I was told that the judge was waiting for Plaintiff. Sgt. Johnny Carmichael, a Deputy with the Sheriff's Department, was in booking waiting to

transport the Plaintiff to court. I asked Sgt. Carmichael to with me to Cell Block G to bring the Plaintiff to booking.

8.    Upon our arrival at G-Block, Lt Leverett informed me that, after extensive attempts to reason with him, Plaintiff still refused to dress and attend his court hearing. Plaintiff stood outside his cell in his underwear. Plaintiff stated emphatically that he did not have to leave his cell if he did not want to, that we could not make him attend court, and that we could not make him get dressed. I advised Plaintiff that he should follow the officer's orders and get dressed to go to court. Plaintiff repeated his refusal to not get dressed or go to court and then entered his cell and stated he was not going anywhere unless we forced him. Plaintiff took a defensive stance and balled his fists as if he was about to engage in a physical struggle with jail personnel, and his words were to the effect of: "You're gonna have to kill me to get me out of here," and "I don't have to go to court."

9.    As Jail Administrator, I consider it our duty as corrections officers to ensure that we follow a judge's orders. It is also our duty to ensure that inmates are allowed to exercise their constitutional right to attend hearings involving them. It is not my experience that inmates have a right not to attend hearings at which they have a constitutional right to be present. At no time did I hear Plaintiff state that he was exercising his "right" to not be present at his sentencing hearing, nor did I hear him state that he had informed the court of this desire, nor did he ask for his attorney in order to exercise that "right."

10.    Plaintiff's cell was located on the second balcony level of G-Block. The railing, which is approximately 3 feet high, was only a couple of feet from the door of his

cell, and the stairs were about fifteen (15) feet from his cell door. A fall from that level of G-Block onto the concrete floor could severely injure an inmate or corrections officer. Although unaccustomed, because of my prior duties with the Sheriff's Department, to the use of the taser before becoming Jail Administrator, it has been my experience since becoming Jail Administrator that the taser, otherwise known as the Electro-Muscular Disruption System, has prevented many injuries in the Chamber County Detention Facility. In fact, the Chambers County Detention Facility has experienced no injuries to inmates or corrections officers since its introduction in 2003 to my knowledge.

11.     All corrections officers, including me, warned Plaintiff that if he did not comply, he would be tased. Sgt. Carmichael warned Plaintiff at least three times that he would shoot him with the taser, if he did not comply. After that, Sgt. Carmichael shouted "Tase, Tase," at least twice, and then Sgt. Carmichael shot the taser into the Plaintiff and gave him a charge one time by pulling the trigger once. Two officers caught Plaintiff so that a fall would not injure him. Plaintiff then stated that he would go to court. Officers took him to the Nurse to be checked, and Plaintiff was then taken to his sentencing hearing. After being tased, Plaintiff did not complain about any injuries, only the painful feeling that the tasing created.

12.     Based on my knowledge of the activities of the Chambers County Detention Facility and the fact that every use of force, like a taser, must be recorded in an incident report, which I review, I know of no tasing of Plaintiff on November 11, 2005.

13.     I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_____
CLAY STEWART

**SWORN TO** and **SUBSCRIBED** before me this 10 day of February 2006.


_____
NOTARY PUBLIC
My Commission Expires: _____

MY COMMISSION EXPIRES AUG. 11, 2009

# EXHIBIT
# C

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **CHRISTOPHER MCCULLOUGH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No.  3:05-CV-1163-F** |
| | )                      **(WO)** |
| **CHAMBERS COUNTY SHERIFF'S** | ) |
| **DEPARTMENT, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

<u>**AFFIDAVIT OF JOHNNY CARMICHAEL**</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF CHAMBERS** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Johnny Carmichael, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Johnny Carmichael.  I am over the age of nineteen and competent to make this affidavit.  I have been employed as a Deputy Sheriff by the Chambers County Sheriff's Department since 1982.

2.     I am familiar with the Plaintiff Christopher McCullough due to his incarceration in the Chambers County Jail.

3.     I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.     I am familiar with the Chambers County Detention Facility Policy and Procedures Directives. The Chambers County Detention Facility Policy and Procedures Directives, 18 June 1991, state our policy regarding Use of Force in Directive # D-112.

Jail personnel may use force for the enforcement of county jail rules and for the prevention of injury to officers and inmates. Use of Force in Directive # D-112, para. 1.a., 1.b., & 1.e. Guidelines to be followed in any situation are: Reasonable attempts to deal with situation before using force; if possible, advise Shift Supervisor or Jail Administrator of situation; only physical force necessary for particular situation should be used; and as soon as inmate is subdued, restrained or stopped in his actions, discontinue force. Use of Force in Directive # D-112, para. 2. Based on what I witnessed on November 10, 2005, those steps were followed with regard to the Plaintiff.

5.      The judge had told me the day before, November 9, 2005, that he wanted Plaintiff back in court for sentencing the first thing the next morning, at 9:00 a.m., November 10, 2005. At approximately 8:45 a.m. on November 10, 2005, I was waiting for the Plaintiff in Booking at the Detention Facility. My standard procedure is to take an inmate to a court hearing about fifteen minutes early before the scheduled hearing, so that he or she is not late. However, at approximately 8:55 a.m. on November 10th, I learned that Christopher McCullough refused orders to leave his cell and prepare to attend the court hearing, which was scheduled for 9:00 a.m. I had come from the courthouse and knew that the judge was waiting for me to bring the Plaintiff to him for sentencing.

6.      At approximately 9:00 a.m., Maj. Stewart and I arrived in G-Block where the Plaintiff was standing outside his cell, and we were informed that Plaintiff still refused to dress and attend his court hearing. I did not say, "Where's he at," or "Nobody don't go to court here." Plaintiff stated emphatically: "I don't have to go." He also stated that we could not make him attend court and that we could not make him get dressed. All of the corrections officers in the area continued to advise Plaintiff that he should get

dressed to go to court. I also advised Plaintiff that he should get dressed to go because the judge was waiting for him and that if he did not, then he would be "tased." Plaintiff repeated his refusal to not get dressed or go to court and then backed into his cell in a "fixin-to-fight" posture, as if to engage us physically to avoid getting dressed and going to court. At some point, someone told me to "tase" the Plaintiff and he had been warned several times , but I waited while we continued to urge him to get dressed. He again stated emphatically that he was not going anywhere unless we forced him.

7.    I consider it my duty as a deputy sheriff to ensure that we follow a judge's orders. It is also our duty to ensure that inmates are allowed to exercise their constitutional right to attend hearings involving them. It is not my experience that inmates have a right not to attend hearings at which they have a constitutional right to be present. Nor have I ever experienced an inmate refusing to attend a hearing in court. Until after Plaintiff's sentencing hearing, I did not hear Plaintiff state that he was exercising his "right" to not be present at his sentencing hearing. I did not hear Plaintiff say that the law books said he did not have to attend a court hearing, nor at any time, did I hear him state that he had informed the court of his desire to not attend the hearing, nor did he ask for his attorney in order to exercise that "right." If I had heard the Plaintiff say that he wanted to exercise a constitutional right, I would have checked to see what to do about the situation, but I did not hear him say that until after I returned him from his sentencing hearing.

8.    Plaintiff's cell was located on the second balcony level of G-Block. The railing, which is approximately 3 feet high, was only a couple of feet from the door of his cell, and the stairs were about fifteen (15) feet from his cell door. A fall from that level of

G-Block onto the concrete floor could severely injure an inmate or corrections officer. I consider the "taser" to be the least lethal means for ensuring that an inmate complies with orders by law enforcement and judges. My experience is that the taser, otherwise known as the Electro-Muscular Disruption System, has prevented many injuries in the Chamber County Detention Facility and the Chambers County Sheriff's Office. In fact, the Chambers County Detention Facility and the Chambers County Sheriff's Office have experienced no injuries to inmates or corrections officers since its introduction in 2003 to my knowledge.

9.    I told other inmates to go to their cells to prevent any type of group action. I warned Plaintiff at least three times that I would shoot him with the taser, if he did not comply. Plaintiff yelled that he did not care if he was tased and that he wasn't going to court. At some point, I heard Maj. Stewart tell me to shoot him with the taser. After that, I shouted, "Tase, tase," at least twice, so that Plaintiff and officers would be aware that I was about to shoot the taser. Then I shot the taser into the Plaintiff and gave him one 5-second charge by pulling the trigger once. I did not pull the trigger on the taser more than once, and I did not hear Plaintiff yell, "Turn it off." In fact, it is my understanding from my experience and training, that a person cannot speak while receiving a taser charge. Lieutenant Leverett and Corrections Officer Hancock caught Plaintiff so that a fall would not injure him and sat him down in a sitting position on the floor. Plaintiff appeared dazed but was unhurt. Then, Corrections Officer Mallard and Lieutenant Leverett helped Plaintiff to get dressed. Plaintiff was handcuffed, taken to the Nurse Station, had a band-aid and ointment placed on where the probe hit his arm, and was taken to his sentencing hearing. After being tased, Plaintiff did not complain about any injuries.

10.     Plaintiff was sentenced, and after I had returned him to the Chambers County Detention Facility, he stated that he had a right to not attend a sentencing hearing. That was the first time that I heard him say anything about a "legal right" to not attend the sentencing hearing and if he had made any statement concerning this matter I would have notified my supervisor and the Circuit Court Judge.

11.     I know of no tasing of Plaintiff on November 11, 2005.

12.     I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

JOHNNY CARMICHAEL

**SWORN TO** and **SUBSCRIBED** before me this 11 day of February 2006.

NOTARY PUBLIC

My Commission Expires: MY COMMISSION EXPIRES AUG. 11, 2008

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHRISTOPHER MCCULLOUGH,            )
                                   )
    Plaintiff,                     )
                                   )
v.                                 )    Civil Action No. 3:05-CV-1163-F
                                   )                     (WO)
CHAMBERS COUNTY SHERIFF'S          )
DEPARTMENT, et al.,                )
                                   )
    Defendants.                    )

## AFFIDAVIT OF WESLEY MALLARD

STATE OF ALABAMA            )
                            )
COUNTY OF CHAMBERS          )

    **BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Wesley Mallard, who being known to me and being by me first duly sworn on oath deposes and says as follows:

    1.    My name is Wesley Mallard. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Corrections Officer by the Chambers County Sheriff's Department since 2005.

    2.    I am familiar with the Plaintiff Christopher McCullough due to his incarceration in the Chambers County Jail.

    3.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

    4.    I am familiar with the Chambers County Detention Facility Policy and Procedures Directives. The Chambers County Detention Facility Policy and Procedures Directives, 18 June 1991, state our policy regarding Use of Force in Directive # D-112.

Jail personnel may use force for the enforcement of county jail rules and for the prevention of injury to officers and inmates. Use of Force in Directive # D-112, para. 1.a., 1.b., & 1.e. Guidelines to be followed in any situation are: Reasonable attempts to deal with situation before using force; if possible, advise Shift Supervisor or Jail Administrator of situation; only physical force necessary for particular situation should be used; and as soon as inmate is subdued, restrained or stopped in his actions, discontinue force. Use of Force in Directive # D-112, para. 2. Based on what I witnessed on November 10, 2005, those steps were followed with regard to the Plaintiff.

5.      On November 10, 2005, I was performing cell inspections, when I was called on the radio and told to get Plaintiff ready for court and bring him to Booking. When I informed the Plaintiff of his need to go to court, he refused to get ready and took his uniform off, but he still wore his boxer shorts. Plaintiff stated that he was "not fuckin' going." Plaintiff used the F-word several times. Sgt. Davidson advised Plaintiff to get ready and that if he did not want to attend court, he should have stayed at the State Prison. I radioed Lieutenant Leverett about his refusal to get ready, and at about 9:00 a.m., she and Corrections Officer Hancock arrived. Lieutenant Leverett advised Plaintiff that the judge was waiting, that he had to get ready, and that if he did not want to go to court, he should have stayed at the State Prison. This attempt to persuade Plaintiff lasted about 20 to 30 minutes, and I understood that Sgt. Carmichael was waiting to transport him to court. Then Maj. Stewart and Sgt. Carmichael arrived. Plaintiff still refused to get dressed.

6.      Plaintiff's cell was located on the second balcony level of G-Block. The railing, which is approximately 3 feet high, was only a couple of feet from the door of his

cell, and the stairs were about fifteen (15) feet from his cell door. A fall from that level of G-Block onto the concrete floor could severely injure an inmate or corrections officer. I consider the "taser" to be the least lethal means for ensuring that an inmate complies with orders by law enforcement and judges. My experience is that the taser, otherwise known as the Electro-Muscular Disruption System, has prevented many injuries in the Chamber County Detention Facility. In fact, the Chambers County Detention Facility has experienced no injuries to inmates or corrections officers since its introduction in 2003 to the best of my knowledge.

7.      Sgt. Carmichael ordered the other inmates into their cells, so I assisted in making sure that order was followed. I was not inside Plaintiff's cell, when Sgt. Carmichael warned Plaintiff at least three times that he would shoot him with the taser, if he did not comply. Plaintiff continued to refuse to go to court. Sgt. Carmichael shouted, "Tase, tase," at least twice, so that Plaintiff and officers would be aware that I was about to shoot the taser. Then he shot the taser into the Plaintiff and gave him one 5-second charge by pulling the trigger once. I do not know of Sgt. Carmichael pulling the trigger any more than once. Lieutenant Leverett and Corrections Officer Hancock caught Plaintiff as he slid partway under his bed. Plaintiff said, "I'll get dressed." Plaintiff was dressed and handcuffed and taken to his sentencing hearing. After being tased, I did not hear Plaintiff complain about any injuries.

8.      I know of no tasing of Plaintiff on November 11, 2005.

9.      I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_(signature)_
WESLEY MALLARD

**SWORN TO** and **SUBSCRIBED** before me this 11 day of February 2006.

_(signature)_
NOTARY PUBLIC
My Commission Expires: _Aug 11, 2009_

# EXHIBIT
# E

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

CHRISTOPHER MCCULLOUGH,  )
)
    Plaintiff,  )
)
v.  )    Civil Action No.  **3:05-CV-1163-F**
)    **(WO)**
CHAMBERS COUNTY SHERIFF'S  )
DEPARTMENT, et al.,  )
)
    Defendants.  )

## AFFIDAVIT OF ANNIE LISA DAVIDSON

STATE OF ALABAMA    )
)
COUNTY OF CHAMBERS    )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Annie Lisa Davidson, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Annie Lisa Davidson. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Corrections Officer by the Chambers County Sheriff's Department since 1999.

2.    I am familiar with the Plaintiff Christopher McCullough due to his incarceration in the Chambers County Jail.

3.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.    I am familiar with the Chambers County Detention Facility Policy and Procedures Directives. The Chambers County Detention Facility Policy and Procedures Directives, 18 June 1991, state our policy regarding Use of Force in Directive # D-112.

Jail personnel may use force for the enforcement of county jail rules and for the prevention of injury to officers and inmates. Use of Force in Directive # D-112, para. 1.a., 1.b., & 1.e. Guidelines to be followed in any situation are: Reasonable attempts to deal with situation before using force; if possible, advise Shift Supervisor or Jail Administrator of situation; only physical force necessary for particular situation should be used; and as soon as inmate is subdued, restrained or stopped in his actions, discontinue force. Use of Force in Directive # D-112, para. 2. Based on what I witnessed on November 10, 2005, those steps were followed with regard to the Plaintiff.

5.      On November 10, 2005, I was performing cell inspections, when I was called on the radio and told to get Plaintiff ready for court and bring him to Booking. When I informed the Plaintiff of his need to go to court, he refused to get ready and took his uniform off, but he still wore his boxer shorts. Plaintiff stated that he was "not fuckin' going." He also said, "Fuck that." Plaintiff said he was not going to court and no one could make him go. I told Plaintiff that if he did not want to attend court, he should not have come from the State Prison. Corrections Officer Mallard radioed Lieutenant Leverett to tell her that Plaintiff refused to get ready to go to court. Lieutenant Leverett came and again asked Plaintiff to get ready, and after advising him that he should have stayed at State Prison if he did not want to attend court, he again refused saying "Well, I still ain't going to court."

6.      Maj. Stewart and Deputy Sheriff Carmichael also arrived and told Plaintiff the same thing the other officers had told and were telling Plaintiff. Plaintiff was told several times to get ready, or he would be "tased." He said, "I ain't going." Plaintiff was warned again to get dressed, or he would be tased. Sgt. Carmichael called out "Taser,

taser," then he used the taser on Plaintiff. After the tasing, Corrections Officer Hancock assisted Plaintiff up from under his bed, under which he had partially slid. Plaintiff did not complain of any injury, nor did I see any injury. Officer Hancock helped Plaintiff get up and get dressed.

7.     Plaintiff's cell was located on the second balcony level of G-Block. The railing, which is approximately 3 feet high, was only a couple of feet from the door of his cell, and the stairs were about fifteen (15) feet from his cell door. A fall from that level of G-Block onto the concrete floor could severely injure an inmate or corrections officer. I consider the "taser" to be the least lethal means for ensuring that an inmate complies with orders by law enforcement and judges. My experience is that the taser, otherwise known as the Electro-Muscular Disruption System, has prevented many injuries in the Chamber County Detention Facility. In fact, the Chambers County Detention Facility has experienced no injuries to inmates or corrections officers since its introduction in 2003 to my knowledge.

8.     I know of no tasing of Plaintiff on November 11, 2005.

9.     I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

ANNIE LISA DAVIDSON

**SWORN TO** and **SUBSCRIBED** before me this _13_ day of February 2006.

_Lakesha R. Everett_
NOTARY PUBLIC
My Commission Expires: _____

MY COMMISSION EXPIRES AUG. 11, 2009

# EXHIBIT
# F

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER MCCULLOUGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:05-CV-1163-F** |
| | ) | **(WO)** |
| **CHAMBERS COUNTY SHERIFF'S** | ) | |
| **DEPARTMENT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF LAKESHA LEVERETT

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF CHAMBERS** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Lakesha Leverett, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Lakesha Leverett.  I am over the age of nineteen and competent to make this affidavit.  I have been employed by the Chambers County Sheriff's Department since 1995. I am a certified instructor as to the taser gun.

2.      I am familiar with the Plaintiff Christopher McCullough due to his incarceration in the Chambers County Jail.

3.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.      After his criminal trial and sentencing in Chambers County, the Plaintiff, Christopher McCullough, was transferred back to William E. Donaldson State Correctional Facility on November 22, 2005. I accompanied the Plaintiff back to

Donaldson Correctional Facility. During the ride, Plaintiff jokes and laughed about the tasing that he received at the Chambers County Detention Facility on November 10, 2005.

5.     I am familiar with the Chambers County Detention Facility Policy and Procedures Directives. The Chambers County Detention Facility Policy and Procedures Directives, 18 June 1991, state our policy regarding Use of Force in Directive # D-112. Jail personnel may use force for the enforcement of county jail rules and for the prevention of injury to officers and inmates. Use of Force in Directive # D-112, para. 1.a., 1.b., & 1.e. Guidelines to be followed in any situation are: Reasonable attempts to deal with situation before using force; if possible, advise Shift Supervisor or Jail Administrator of situation; only physical force necessary for particular situation should be used; and as soon as inmate is subdued, restrained or stopped in his actions, discontinue force. Use of Force in Directive # D-112, para. 2. Based on what I witnessed on November 10, 2005, those steps were followed with regard to the Plaintiff.

6.     On November 10, 2005, at approximately 8:30 or 8:40 a.m., while in booking, I learned from Corrections Officer Wesley Mallard that Christopher McCullough refused orders to leave his cell and prepare to attend a court hearing, which was scheduled for 9:00 a.m. I spoke to Plaintiff, who was sitting on his bed and telling me that he was not going to court, and explained to him the need for him to comply with the instruction. I told him that if he was not going to attend court, then he should have informed the guards at his prison before ever arriving at the Chambers County Detention Facility. I repeated to Plaintiff that he must get dressed and attend the court hearing. Plaintiff continued to sit on his bed and refused to go, stating that it was his

"constitutional right" to not attend the hearing. I again told him to get up and get ready for court, or we would dress him and carry him out of the cell to take him to court. Plaintiff still refused to get up and get dressed.

7.    At approximately 9:00 a.m., Sgt. Carmichael and Maj. Stewart arrived, and I informed Maj. Stewart that, after extensive attempts to reason with him, Plaintiff still refused to dress and attend his court hearing. At that point, Plaintiff stood outside his cell in his underwear. Plaintiff stated emphatically that he did not have to leave his cell if he did not want to, that we could not make him attend court, and that we could not make him get dressed. All of the corrections officers in the area continued to advise Plaintiff that he should get dressed to go to court. Sgt. Carmichael also advised Plaintiff that he should get dressed to go because the judge was waiting for him. Plaintiff repeated his refusal to not get dressed or go to court and then entered his cell and stated he was not going anywhere unless we forced him. Plaintiff stated words to the effect of: "You're gonna have to kill me to get me out of here."

8.    I consider it my duty as a corrections officer to ensure that we follow a judge's orders. It is also our duty to ensure that inmates are allowed to exercise their constitutional right to attend hearings involving them. It is not my experience that inmates have a right not to attend hearings at which they have a constitutional right to be present. At no time did I hear Plaintiff state that he had informed the court of this desire, nor did he ask for his attorney in order to exercise that "right."

9.    Plaintiff's cell was located on the second balcony level of G-Block. The railing, which is approximately 3 feet high, was only a couple of feet from the door of his cell, and the stairs were about fifteen (15) feet from his cell door. A fall from that level of

G-Block onto the concrete floor could severely injure an inmate or corrections officer. Once, I had to wrestle with an inmate that had a screw driver and threatened to kill me. My experience is that the taser, otherwise known as the Electro-Muscular Disruption System, has prevented many injuries in the Chamber County Detention Facility. In fact, the Chambers County Detention Facility has experienced no injuries to inmates or corrections officers since its introduction in 2003 to my knowledge.

10.     All corrections officers, including me, warned Plaintiff that if he did not comply, he would be tased. Sgt. Carmichael warned Plaintiff at least three times that he would shoot him with the taser, if he did not comply. Plaintiff yelled that he did not care if he was tased and that he wasn't going to court. After that, Sgt. Carmichael shouted "Tase, Tase," at least twice, so that we could avoid the probes that the taser gun shoots. Then Sgt. Carmichael shot the taser into the Plaintiff and gave him a 5-second charge one time by pulling the trigger once. Corrections Officer Hancock and I caught Plaintiff so that a fall would not injure him and sat him down in a sitting position on the floor. After that, I told Plaintiff to get dressed for court. Plaintiff just looked up at us and sat on his bed. Corrections Officer Hancock removed the probes from Plaintiff's skin; one had entered his arm. Then, Corrections Officer Mallard and I helped Plaintiff to get dressed. Plaintiff was handcuffed, taken to the Nurse, who placed ointment and a band-aid on the taser probe entry point, and taken to his sentencing hearing. After being tased, Plaintiff did not complain about any injuries, only the painful feeling that the tasing created.

11.     I know of no tasing of Plaintiff on November 11, 2005.

12.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_LaKesha Leverett_
LAKESHA LEVERETT

**SWORN TO** and **SUBSCRIBED** before me this ⟨8⟩ day of February 2006.

_Brandy L. Dee_
NOTARY PUBLIC
My Commission Expires: 12/20/2007

# EXHIBIT
# G

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHRISTOPHER MCCULLOUGH,       )
                              )
        Plaintiff,            )
                              )
v.                            )        Civil Action No.  3:05-CV-1163-F
                              )                           (WO)
CHAMBERS COUNTY SHERIFF'S     )
DEPARTMENT, et al.,           )
                              )
        Defendants.           )

## AFFIDAVIT OF TEDDY HANCOCK

STATE OF ALABAMA         )
                         )
COUNTY OF CHAMBERS       )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Teddy Hancock, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Teddy Hancock. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Corrections Officer by the Chambers County Sheriff's Department since 2005.

2.     I am familiar with the Plaintiff Christopher McCullough due to his incarceration in the Chambers County Jail.

3.     I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.     I am familiar with the Chambers County Detention Facility Policy and Procedures Directives. The Chambers County Detention Facility Policy and Procedures Directives, 18 June 1991, state our policy regarding Use of Force in Directive # D-112.

Jail personnel may use force for the enforcement of county jail rules and for the prevention of injury to officers and inmates. Use of Force in Directive # D-112, para. 1.a., 1.b., & 1.e. Guidelines to be followed in any situation are: Reasonable attempts to deal with situation before using force; if possible, advise Shift Supervisor or Jail Administrator of situation; only physical force necessary for particular situation should be used; and as soon as inmate is subdued, restrained or stopped in his actions, discontinue force. Use of Force in Directive # D-112, para. 2. Based on what I witnessed on November 10, 2005, those steps were followed with regard to the Plaintiff.

5.    On November 10, 2005, I was in G-Block and attempted to assist Plaintiff in going to court. Plaintiff was in Cell G-3 and said he wouldn't do it. I asked him what he wouldn't do, and he responded that he refused to go to the courthouse. I told Plaintiff that he could not refuse to go to the courthouse, but he again stated that he would not go. Therefore, I radioed Booking to inform them that Plaintiff refused to come down to go to court. Sgt. Carmichael then radioed back that Plaintiff must get ready by the time he got to G-Block. Plaintiff overheard Sgt. Carmichael's statement and insisted that he was not going to the courthouse.

6.    At some point in time, Lieutenant Leverett and Sgt. Davidson arrived, and they both advised Plaintiff to get ready. Maj. Stewart and Sgt. Carmichael also arrived and told Plaintiff the same thing the other officers had told and were telling Plaintiff. Sgt. Carmichael ordered the other inmates into their cells, and Officer Mallard assisted in that process. Sgt. Carmichael insisted several times that Plaintiff get dressed so that he could transport him to court. Sgt. Carmichael gave Plaintiff three chances to get ready, but Plaintiff did not get dressed. Therefore, after giving at least three warnings to Plaintiff,

Sgt. Carmichael had to use the taser on him. Sgt. Carmichael pulled the taser trigger one time, which gave Plaintiff a 5-second charge. When Plaintiff was tased, I helped to keep Plaintiff from hitting floor too hard or in a way that would injure him. After the tasing, I assisted Plaintiff up from under his bed, under which he had partially slid, and I took the probe out of his arm. Plaintiff did not complain of any injury, nor did I see any injury. If there was any blood, it was where the probe had entered his arm. During these events, I do not remember the Plaintiff saying anything about a "constitutional right" to not attend the court hearing.

7.    Plaintiff's cell was located on the second balcony level of G-Block. The railing, which is approximately 3 feet high, was only a couple of feet from the door of his cell, and the stairs were about fifteen (15) feet from his cell door. A fall from that level of G-Block onto the concrete floor could severely injure an inmate or corrections officer. I consider the "taser" to be the least lethal means for ensuring that an inmate complies with orders by law enforcement and judges. My experience is that the taser, otherwise known as the Electro-Muscular Disruption System, has prevented many injuries in the Chamber County Detention Facility. In fact, the Chambers County Detention Facility has experienced no injuries to inmates or corrections officers since its introduction in 2003 to my knowledge.

8.    I know of no tasing of Plaintiff on November 11, 2005.

9.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

_____
TEDDY HANCOCK

**SWORN TO** and **SUBSCRIBED** before me this ⅃⅃ day of February 2006.


_____
NOTARY PUBLIC          MY COMMISSION EXPIRES AUG. 11, 2009
My Commission Expires: _____

# EXHIBIT
# H

CHAMBERS COUNTY JAIL
POLICY AND PROCEDURE DIRECTIVE

USE OF FORCE

DATE ISSUED:  June 18, 1991          NUMBER:  D -112

POLICY:

It is the policy of the Chambers County Jail that the use of force against
an inmate will be permitted only only under certain circumstances and
when no reasonable alternative is immediately available.  The Chambers
County Jail recognizes Title 13A-3-20 through 13A-3-30 of the Code of
Alabama as it addresses this issue.

DEFINITION:

Force is defined as any physical force that is directed toward an inmate
or a group of inmates, either by direct officer contact or by the use
of any weapon such as chemical mace, tear gas, riot clubs, or other
objects of force.

PROCEDURE:

1.   It is generally recognized that jail personnel have a privilege to
     use physical force as it relates to five (5) situations:

     a.   Self-Defense -- Jail personnel may use force to the degree
          necessary in their self-defense (see Title 13A-3-23).

     b.   Defense of Third Persons -- Jail personnel may use force
          to the degree necessary in the defense of a third person,
          including another staff person, an inmate, or a visitor
          (see Title 13A-3-23).  This situation can be extended to an
          inmate's lack of care for himself/herself that injures or
          threatens to injure his/her health (see Title 13A-3-24).

     c.   Prevention of a Crime -- Jail personnel may use force to
          the degree necessary to prevent the commission of a
          crime in the jail (see Title 13A-3-24).

     d.   Prevention of Escape -- Jail personnel may use force to
          the degree necessary for the prevention of an escape
          (see Title 13A-3-27).

     e.   Enforcement of Chambers County Jail Rules -- Jail per-
          sonnel may use force to the degree necessary in the
          enforcement of jail rules and regulations (see Title 13A-
          3-24).

USE OF FORCE (cont.)

2.　The following guidelines will be followed relative to any situation where force may be used:

　　a.　Prior to any use of physical force, all reasonable attempts should be made to identify and utilize alternative means to deal with the situation.

　　b.　Whenever possible, prior to the use of physical force, the Shift Supervisor or Jail Administrator should be advised of the situation at hand.

　　c.　Physical force should be used only to that degree necessary under the facts and circumstances of the particular situation.

　　d.　As soon as the inmate is subdued, restrained or stopped in his/her actions, the force should be discontinued.

3.　Force will not be used against an inmate as a means of punishment.

4.　Following any use of force in the Chambers County Jail, a detailed Incident Report will be completed by each officer involved either in using force or in viewing the use of force. The written report will be given to the Jail Administrator. It is suggested that officers retain a copy of their report for possible future use.

5.　Physical restraints may be used by the Chambers County Jail, on a limited basis, to control an inmate, for the prevention of an escape, or to prevent the inmate from harming himself/herself, or to prevent an assault by the inmate on other persons. Guidelines for the use of restraints are the same as those for the use of force.

　　Restraint devices will not be used for punishment purposes at any time.

# EXHIBIT
# I

CHAMBERS COUNTY JAIL
POLICY AND PROCEDURE DIRECTIVE

### ACCESS TO THE COURTS

DATE ISSUED: <u>June 18, 1991</u>    NUMBER: <u>F - 104</u>

---

POLICY:

It is the policy of the Chambers County Jail that inmate access to the courts shall be governed in a manner which will assist in the guarantee of the legal rights of the inmate.

PROCEDURE:

1.  Access of inmates to any court shall not be blocked, denied, delayed or otherwise obstructed by any member of the jail staff.

2.  Any inmate mail addressed to the court shall be forwarded, without inspection or delay, once received by jail staff.

3.  Any court mail addressed to any inmate shall be delivered without delay once received by jail staff.

4.  Letters to/from any court shall not be opened for inspection.

5.  Negative sanctions against any inmate for correspondence with any court is prohibited.

DEFINITION:  The term "court" is inclusive of all agents and offices of any court.

ACJS 6-001

# EXHIBIT
# J

CHAMBERS COUNTY JAIL
POLICY AND PROCEDURE DIRECTIVE

INMATE GRIEVANCES

DATE ISSUED:    June 18, 1991          NUMBER:      F - 102

POLICY:

It is the policy of the Chambers County Jail that inmates are permitted to submit grievances to the jail administration and that each grievance will be acted upon.

PROCEDURE:

1.    An inmate wishing to file a grievance will be provided with an Inmate Grievance Form upon request.

2.    Completed Grievance Forms will be delivered promptly to the Shift Supervisor who will either resolve the grievance or forward it to the Jail Administrator.

3.    The Jail Administrator reserves the final decision on inmate grievances.

4.    The decision of the Jail Administrator may be appealed by the inmate in writing to the Sheriff of Chambers County within seventy-two (72) hours of the receipt of the grievance decision.

5.    Inmates will be advised of their right to file grievances at the time of admission to the jail.