IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

_____

| | | |
|---|---|---|
| CHRISTOPHER MCCULLOUGH #174 909 | * | |
| Plaintiff, | * | |
| v. | * | 3:05-CV-1163-WKW (WO) |
| SGT. JOHN CARMICHAEL, *et al.*, | * | |
| Defendants. | * | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Christopher McCullough, an inmate incarcerated at the William E. Donaldson Correctional Facility in Bessemer, Alabama, alleges that he was subjected to excessive force during his incarceration at the Chambers County Detention Facility located in LaFayette, Alabama. Named as defendants are Sergeant John Carmichael and Major Clay Stewart. Plaintiff seeks damages, requests that criminal charges be brought against Defendants Carmichael and Stewart for first degree assault and unnecessary use of force, and asks that Defendants Carmichael and Stewart and other county jail employees take a polygraph test regarding the subject matter of the complaint. Plaintiff demands trial by jury.

In accordance with the orders of the court, Defendants filed an answer, special report, supplemental special report, and supporting evidentiary material in response to the allegations contained in the complaint. The court informed Plaintiff that Defendants' special

report, as supplemented, may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff filed a response to the special report filed by Defendants. This case is now pending on Defendants' motion for summary judgment. Upon consideration of the motion, Plaintiff's opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that Defendants' motion for summary judgment on Plaintiff's excessive force claim is due to be denied.

## I. STANDARD OF REVIEW

To survive Defendants' properly supported motion for summary judgment, Plaintiff must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (nonmoving party is required to produce "sufficient [favorable] evidence" indicating he is entitled to relief sought). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). A plaintiff's conclusory allegations similarly do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995); *Fullman v. Graddick*, 739

F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which the plaintiff bears the burden of proof, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## II.  DISCUSSION

*A. Injunctive/Declaratory Relief*

Plaintiff is no longer incarcerated at the Chambers County Detention Facility. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at the county jail, his request for injunctive and/or declaratory relief have been rendered moot.

*B. Criminal Charges*

Plaintiff requests that criminal charges be filed against Defendants Stewart and Carmichael for first degree assault and unnecessary use of force. As a private citizen, Plaintiff cannot commence criminal proceedings on his own. *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (a "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."); *Leeke v. Timmerman*, 454 U.S. 83 (1981) (same); *see also Savage v. Arnold*, 403 F. Supp. 172, 174 (E.D. Pa. 1975) (private citizens

have no right to institute criminal prosecutions in federal court); *United States v. Panza*, 381 F. Supp 1133 (W.D. Pa. 1974) (same). The decision whether to prosecute a particular case is in the discretion of the prosecutorial authority. *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *Otero v. United States Attorney General*, 832 F.2d 141 (11th Cir. 1987). Such decision is not generally subject to judicial review. *Massey v. Smith*, 555 F.2d 1355, 1356 (8th Cir.1977). Consequently, Plaintiff's request to initiate criminal charges against the named defendants is due to be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B).

*C. Official Capacity Claims*

To the extent Plaintiff seeks to sue Defendants in their official as well as their individual capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other tha4n name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Under all facets of Alabama law, a county sheriff, his jailers, and medical staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff as member of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State). "[A] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its

Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants Carmichael and Stewart are state officials entitled to Eleventh Amendment immunity when sued in their official capacities. Defendants are, therefore, entitled to absolute immunity from Plaintiff's claims for monetary damages asserted against them in their official capacities.

*D. Individual Capacity Claim*

*1. The Excessive Force Claim*

Defendants argue that they are entitled to qualified immunity on Plaintiff's excessive force claim. The law of this Circuit, however, precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation.[1] *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). A qualified immunity defense is, therefore, not available when a plaintiff properly pleads the use of excessive force. *Id.* Plaintiff has properly pled a claim of excessive force. Thus, the only question in this case is whether he has alleged facts sufficient to survive a motion for summary judgment. *Id.* Accordingly, this court will consider whether Plaintiff's allegation

---

[1] Plaintiff was a convicted inmate at the time the events about which he complains occurred.

that Defendants used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

In *Hudson*, the Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. *Id.* 503 U.S. at 9; *but see Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-

10 (quoting *Whitley*, 475 U.S. at 327).

  The undisputed evidence demonstrates that in November 2005 Plaintiff was transported to the Chambers County Detention Facility from the Donaldson Correctional Facility in Bessemer, Alabama, to stand trial on burglary and theft charges. Plaintiff's trial took place on November 9, 2005. A jury convicted Plaintiff of the charges and the trial court set sentencing for November 10, 2005. At approximately 8:30 a.m. on the morning of November 10, 2005 Officer Wesley Mallard and Sgt. Annie Lisa Davidson were performing cell inspections. During their inspections they received a radio call to bring Plaintiff to booking so he could be taken to court for his sentencing hearing. Plaintiff, desiring to waive his presence at the sentencing hearing, refused the jailers directives that he get dressed and ready for court. After several jailers spent 20 to 30 minutes trying to persuade Plaintiff to get ready for his court appearance, he was informed that jail personnel would dress him and take him to court if necessary. At 9:00 a.m. Major Stewart learned that Plaintiff had refused orders to get ready for his court hearing, which was scheduled for 9:00 a.m. In light of this information Major Stewart asked Sgt. Carmichael to accompany him to Plaintiff's cell block. Sgt. Carmichael, a deputy with the Chambers County Sheriff's Department, had been waiting in the booking area to transport Plaintiff to the courthouse. When Plaintiff saw Defendants Stewart and Carmichael he advised them of his desire not to go to court. Defendants cautioned Plaintiff repeatedly that if he failed to comply with the directive that he get ready for court he would be tased. Upon his continued failure to comply with Defendants' directives, Sgt. Carmichael tased the Plaintiff. (*See Doc. No. 1; Doc. No. 11, Exhs. A-G;*

*Doc No. 18, Exh. K.*)

      Plaintiff maintains that Defendants' decision to tase him constituted an unnecessary and excessive use of force because he posed no threat to them. Plaintiff asserts that when he was tased he started shaking. His body went numb and he fell face first on the concrete floor. Plaintiff contends that he yelled to Sgt. Carmichael to turn off the taser but complains that the officer continued to squeeze the trigger while taunting him by saying "are you going to court now![?]" Plaintiff alleges that the effects of the taser were excruciating to him, stating that he felt complete pain all over his body, his heart began to beat extremely fast, and his body went numb. After he was helped to his feet, Plaintiff removed the "needle-like object" stuck in his arm. He indicates that the hole left in his arm by the taser probe subsequently healed. (*Doc. No. 1.*)

      According to Defendants, when Major Stewart arrived at G-Block, he learned from Lt. Leverette that extensive reasoning with Plaintiff failed to persuade him to get dressed and ready for court. Major Stewart observed Plaintiff outside of his cell in his underwear. After being emphatically informed by Plaintiff that he did not have to leave his cell or attend court if he did not wish to do so, Major Stewart advised Plaintiff to follow jailers' orders that he ready himself for his court appearance.[2] Plaintiff refused to comply and went into his cell, stating he would not go anywhere unless he was forced to. Plaintiff assumed a defensive stance and balled his fists as if he were about to engage in a physical struggle with jail

---

[2] Defendants Carmichael and Stewart deny hearing Plaintiff mention that he had a constitutional right not to attend his sentencing hearing nor did they hear him ask for his attorney in order to exercise that right. (*Doc. No. 11, Exhs. B, C.*)

personnel. Major Stewart warned Plaintiff again that his continued failure to comply with orders that he get ready for court would cause him to be tased. Plaintiff still refused to comply with Defendants' orders. Nevertheless, Sgt. Carmichael gave Plaintiff at least three additional warnings to follow orders or be tased. After hearing Major Stewart shout "Tase, Tase" at least twice, Sgt. Carmichael then shot Plaintiff with the taser. Sgt. Carmichael maintains that he pulled the trigger on the taser only once, which gave Plaintiff a five-second charge. As Plaintiff fell to the ground due to the taser shot, jail personnel caught him and set him on the floor in a sitting position. Plaintiff then stated he would go to court. Before transporting him to the courthouse, jailers took Plaintiff to the nurse for examination. He did not complain about any injuries, only that the taser had caused him to experience a painful feeling. A nurse put ointment and a band-aid on the taser probe entry point. Thereafter, Plaintiff was transported to his sentencing hearing. (*Doc. No. 11, Exhs. B-G; Doc. No. 18.*)

While the evidence before the court reflects that Plaintiff's actual injuries, if any, from being tased were no more than *de minimis*, the injuries he received are only one factor for consideration. While the absence of serious injury is relevant to an Eighth Amendment inquiry, it does not end this inquiry. *Hudson*, 503 U.S. at 7; *Skrtich*, 280 F.3d at 1304 n.8, citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *see also Smith v. Mensinger*, 293 F.3d 641, 649 (3rd Cir. 2002) (considering the *de minimis* nature of injuries is an issue of fact to be resolved by the fact finder based on the totality of the evidence); *Brooks v. Kyler*, 204 F.3d 102, 103 (3rd Cir. 2000) (holding that there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to state an excessive force

claim). The court must also consider the need for the application of force, the amount of force exerted, the threat reasonably perceived by the official, and any efforts to temper the severity of the forceful response. *Skrtich*, 280 F.3d at 1305 n.9.

Plaintiff maintains that Defendants' decision to tase him was unjustified and an unnecessary and excessive use of force. He argues that he did not present any type of threat to Defendants and denies using foul language or acting defensively at any time during the November 10, 2005 incident. He denies that anyone kept him from falling face first onto the floor after being tased and alleges that he hit the floor "shaking and flapping like a fish out of water" and also injured his left eye. (*Doc. No. 17.*) Defendants deny that the use of force under the circumstances was excessive and maintain that use of a taser is considered to be the least lethal means of gaining an inmate's compliance with orders of law enforcement personnel and judges. Defendants further indicate that, due to Plaintiff's cell location on the second floor and the fact that the balcony railing there is only three feet high, the use of a taser lessens the potential for injuries which could be caused by an inmate's or jailer's falling from the balcony to the floor below. Plaintiff counters, however, that he was inside his cell at the time of the incident and, therefore, it would not have been possible for him to fall over the railing. (*Doc. No. 11, Exhs. B, C, Doc. No. 17.*)

The court is mindful of the fact that prisoners' non-compliance with the rules and regulations of a jail and the directives of their custodians is not easily tolerated in a prison environment where strict adherence to rules and order within the institution's walls are mandated for security, safety, and discipline. Nevertheless, Plaintiff maintains that at no time

during the incident in question did he pose a threat to Defendants and that, instead of tasing him, they should have allowed him either to exercise his ability to waive a personal appearance at his sentencing hearing or contact the court and/or his attorney regarding his desire not to personally appear at the sentencing proceedings. Plaintiff, therefore, argues that Defendants' use of force under these circumstances was excessive. When viewing the facts in the light most favorable to Plaintiff, the court concludes that Defendants are not entitled to qualified immunity as Plaintiff alleges facts sufficient to survive a motion for summary judgment. *See Skrtich*, 280 F.3d at 1301. Consequently, the motion for summary judgment with respect to the excessive force claim against Defendants Stewart and Carmichael is due to be denied.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Plaintiff's claims for injunctive and/or declaratory relief be DISMISSED as moot;

2. Plaintiff's request to initiate criminal charges against Defendants be DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(i);

3. Defendants' motion for summary judgment on Plaintiff's excessive force claim (*Doc. No. 11*) be DENIED; and

4. Plaintiff's claim of excessive force against Defendants Carmichael and Stewart be SET for trial by jury.

It is further

ORDERED that on or before **July 15, 2008** the parties may file objections to the

Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 2nd day of July, 2008.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE