IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MCCULLOUGH,<br>    #174 909 | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 3:05-CV-1163-WKW<br>) |
| CHAMBERS COUNTY SHERIFF'S,<br>OFFICE, et al., | )<br>)<br>) |
| Defendants. | ) |

## DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S
## JULY 2, 2008 RECOMMENDATION

COME NOW the Defendants in the above-styled cause, Major Clay Stewart and Sgt. John Carmichael, officers of the Chambers County Detention Facility, and object to the Magistrate Judge's July 2, 2008 Recommendation as follows:

1. The July 2, 2008 Magistrate Judge's Recommendation makes no mention of the fact that Plaintiff failed to file any Grievance whatsoever about the incident alleged in his Complaint to this Court, and that he thereby failed to exhaust his administrative remedies before filing his federal action.

2. Plaintiff's failure to exhaust his administrative remedies is sufficient under 42 U.S.C. § 1997e for Defendants to obtain Summary Judgment.

3. Plaintiff's entire Inmate File contains no evidence of a Grievance being filed or requested by Plaintiff at any time about the November 10, 2005 tasing incident. (Plaintiff's Inmate File, Exhibit 1 to Attachment D, Stewart aff.)

4. Neither any officers who could have received a request from Plaintiff, nor the Lieutenant who was the Grievance Coordinator, nor the Administrator, nor the Sheriff remember or know of any Grievance being requested or denied to Plaintiff. (Attachment C, Affidavit of Lieutenant LaKesha McCoy (formerly Leverett); Attachment D, Affidavit of Administrator Clay Stewart, ¶¶ 10-15; Attachment E, Affidavit of Sheriff Sid Lockhart, ¶¶ 4-7; Attachment F, Affidavit of Sergeant Annie Davidson, ¶ 4; Attachment G, Affidavit of Correction Officer Teddy Hancock, ¶ 4; Attachment H, Affidavit of Correction Officer Charles Jordan (affidavit to be supplemented upon receipt of signed and sworn affidavit), ¶ 4; Attachment I, not applicable; Attachment J, Affidavit of Correction Officer Crystal Langley Richardson, ¶ 4; Attachment K, Affidavit of Correction Officer Mark Nelson, ¶ 4; Attachment L, Affidavit of Correction Officer Felton Spradlin, ¶ 4; Attachment M, Affidavit of Correction Officer Ricky Mann, ¶ 4.)

5. Until the Magistrate Judge issued her May 23, 2008 Recommendation that Defendants be granted Summary Judgment because Plaintiff failed to exhaust his administrative remedies under 42 U.S.C. § 1997e(a), Plaintiff had never asserted in any filing before this Court that he attempted to file any type of complaint or Grievance or that he requested and was refused the right to file a Grievance about the alleged incident of November 10, 2005 at the Chambers County Detention Facility with the Chambers County Detention Facility, with any officer at the Chambers County Detention Facility, with the Chambers County Sheriff's Office, or with any other correctional institution or officer at any facility in which Plaintiff was housed since November 10, 2005.

6. In fact, in Plaintiff's Answer to Defendants' Special Report, he initially indicated that he did not file a Grievance because he thought it would be futile. (Doc. No. 17 at 1.)

7. The Magistrate Judge's original recommendation was that Plaintiff contended "that the filing of a grievance would have been futile." (Magistrate Judge's May 23, 2008 Recommendation. (Doc. 25 at 7.))

8. Plaintiff's entire jail filed (Exhibit 1, McCullough Inmate File, "Inmate File," to Attachment E, Administrator Stewart's aff. to this Objection,) indicated nothing being filed, requested, or submitted by Plaintiff or on behalf of Plaintiff to anyone that could possibly be construed as a Grievance or a request to file a Grievance regarding the November 10, 2005 incident.

9. The Chambers County Sheriff's Office has no record of and no personnel of that Office, including Sheriff Lockhart, know of or remember any letter, complaint, or Grievance sent by Plaintiff regarding this incident at any time since November 10, 2008. (Exhibit F, Affidavit of Sheriff Lockhart, "Lockhart aff.," ¶¶ 4-7.)

10. Had Sheriff Lockhart received such a complaint or Grievance from Plaintiff, he would have contacted Major Stewart, discussed the matter with Major Stewart, and a response would have been prepared for Plaintiff. (Attachment C, Sheriff's aff., ¶ 6; Attachment D, Stewart aff., ¶ 12.)

11. The Chambers County Detention Facility has a Grievance Policy in its Manual that every correction officer must be trained in and follow and which was published to the inmates in the Inmate Handbook. (Attachment A, Chambers County Detention Facility Policy and Procedures Manual; Chambers County Detention Facility Inmate Handbook; Attachment D, Stewart aff., ¶ 4.)

12. Neither the Sheriff's Office nor the Chambers County Detention Facility have any record of Plaintiff sending a complaint or Grievance out of the Facility to the Sheriff's Office, or sent from Donaldson Correctional Facility to the Sheriff's Office or the Chambers County Detention Facility after Plaintiff was transported to Donaldson. (Attachment E, Sheriff's aff., ¶ 6; Attachment D, Stewart aff. & Exhibit 4 to Attachment, "Plaintiff's Mail Log"; Attachment C, McCoy aff., ¶¶ 4-6.)

13. An Investigator, Jason Fuller, appointed by Major Stewart to investigate Plaintiff's assertion that he attempted to or requested a Grievance found no evidence of such. (Investigator Fuller's Report, Exhibit 3 to Attachment D, Stewart aff.)

14. Other inmates were able to successfully file and receive an answer to a Grievance at the Chambers County Detention Facility from Major Stewart, even though they used something other than the Grievance Form and even when litigation was threatened against the Facility or Major Stewart. ("Other Inmates' Grievances," Exhibit 2 to Attachment D, Stewart aff.)

15. Had Plaintiff filed a Grievance about the November 10, 2005 incident, Major Stewart would have referred Plaintiff to the Incident Report prepared by the Officers involved,. If Plaintiff was dissatisfied with Major Stewart's response, he could have appealed to Sheriff Lockhart. He then would have exhausted his administrative remedies, no matter how futile they may have seemed to him at the time, and he could then have filed a lawsuit. (Attachment D, Stewart aff., ¶ 14.)

16. Plaintiff also failed to file a claim before the State Board of Adjustment.

17. Defendants are entitled to Sovereign Immunity in their official capacities.

18. Plaintiff was taken to a nurse after the incident, requested no other medical care, and, therefore, suffered no more than *de minimis* injury.

19. Plaintiff has not stated a constitutional violation.

20. Even if Plaintiff had stated a constitutional violation, Defendants are entitled to Qualified Immunity in this case because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.

Defendants provide in the discussion below a detailed explanation as to why the Magistrate Judge's Recommendation should be withdrawn, and they support their argument with sufficient documentary and affidavit evidence. There is no genuine issue of material fact, particularly with

respect to the question whether Plaintiff filed or attempted to file a Grievance with the Chambers County Detention Facility or the Sheriff's Office.[1]

## I. PLAINTIFF HAS NOT PROVIDED SUFFICIENT EVIDENCE TO CREATE A "GENUINE ISSUE OF MATERIAL FACT" UNDER FEDERAL COURTS' THE SUMMARY JUDGMENT STANDARD.

Federal Rule of Civil Procedure 56 governs motions for summary judgment: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

"The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

---

[1] Attached to these Objections, Defendants have included abundant, but not exhaustive, documentary evidence. The events complained about by Plaintiff are almost three years old, and some Chambers County Correction Officers no longer work at the Chambers County Detention Facility. Defendants are confident that any further affidavits will confirm what those attached to these Objections state. Instead of requesting an extension of time to file these Objections, Defendants request the indulgence of the Court until August 15, 2008 to find these Officers and obtain affidavits from them, if possible. Upon receiving any such affidavits before August 125, 2008, Defendants will supplement these Objections.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Celotex, 477 U.S. at 327.

On a motion for summary judgment, the court should view the evidence in the light most favorable to the non-movant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the non-movant's benefit. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000). "[T]he court should give credence to the evidence favoring the non-movant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Id. (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299).[2] The Court "need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler

---

[2] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review, relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

6

County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) (quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998)).

Last year the United States Supreme Court, in a qualified immunity case, revisited the standard of review in the context of a motion for summary judgment emphasizing the "reasonable jury" aspect of the standard:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.*

Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) (Emphasis added).

In Scott, the Supreme Court rejected the reading of the record by the district court and the Eleventh Circuit Court of Appeals which had, in an effort to view the evidence in a light most favorable to the plaintiff, credited the plaintiff's deposition testimony. In his deposition, Harris swore that "[he had] remained in control of his vehicle, slowed for turns and intersections, and typically used his indicators for turns. He did not run any motorists off the road. Nor was he a threat to pedestrians in the shopping center parking lot, which was free from pedestrian and vehicular traffic as the center was closed." Id. at 1775. Yet the plaintiff's words were flatly contradicted by other more credible aspects of the record, particularly a videotape showing him driving in an extremely reckless manner: "The videotape tells quite a different story." Id.

7

Nothing in the Scott opinion, however, limited its application to cases where the plaintiff's testimony is pitted against videotape. The Ninth Circuit in Skylstad v. Reynolds, 2007 WL 2766436 at *2 (9th Cir. 2007), relying on Scott's broadening of the motion for summary judgment standard, rejected the plaintiff's version of the facts *even without a videotape disputing it*.

> Skylstad disputes that he actively resisted arrest. Declarations from officers on the scene unanimously state that Skylstad refused to exit the car and violently resisted arrest. Skylstad states that he voluntarily surrendered, that the officers unnecessarily used a K-9 dog to repeatedly bite and attack him, and that the officers smashed his head against the car and cut his arms open at the scene to take his blood. Skylstad offers the declarations of his wife and two other witnesses to support his version of events. The medical evidence, however, directly contradicts Skylstad's version of events. Although the dog bite was serious and required medical attention, there is no medical evidence of multiple dog bites, head injury, or cuts on the arms. . . . In summary, Skylstad failed to raise a triable issue for a jury on his claim of excessive force.

Skylstad, 2007 WL 2766436 at *2 - *3.

Similarly, the Northern District of Georgia granted summary judgment on an excessive force claim, citing Scott v. Harris's standard and concluding that "the evidence supporting Williams's claim that Hatcher used unconstitutionally excessive force is exceptionally weak." Williams v. Martin, 2007 WL 4139476 (N.D. Ga. Oct 29, 2007); see Morales-Arcadio v. Shannon Produce Farms, Inc. 2007 WL 2106188, *9 (S.D. Ga. 2007) ("There thus is no genuine issue of fact that the checks face-dated 8/11/04 were printed and given to the workers in late September or early October 2004. Though Shannon would like to take a position without evidentiary support other than the user-selected face date on the check, that 'position is so utterly discredited by the record that no reasonable jury could . . . believe [ ]' it." (quoting Scott v. Harris, 550 U.S. ---, 127 S. Ct. 1769, 1776 (2007)).

  **A. Plaintiff's Excessive Force claim is not supported by the *de minimis* injury suffered by Plaintiff.**

In this case, the Plaintiff's injury was *de minimis*, but the Magistrate Judge in the July 2, 2008 Recommendation stated as a basis for denying summary judgment that Plaintiff claims the force used

8

against him was unjustified because he did not present any type of threat.  He denied using any foul language or acting defensively during the incident.  He claims no one attempted to stop him from falling face first on the floor and that he "hit the floor 'shaking and flapping like a fish out of water' and also injured his eye."  (Doc. 28 at 11.)  First, Defendants do not understand how the allegations of injury by Plaintiff indicate a genuine issue as to Plaintiff's excessive force claim.  After the incident, Plaintiff saw a nurse, who placed a band-aid on his arm but saw fit to do no more treatment, and Plaintiff has not alleged that he has any continuing injury of any kind whatsoever, nor has he claimed that he has needed any other medical treatment.  The above description is that of a taser doing its job, that of immobilizing a non-compliant inmate.  Plaintiff has presented no medical evidence indicating a more than a *de minimis* injury, and he has presented no evidence, except his bald assertions that he was not a threat, that he was in his cell and not near the second-floor railing, and that no one attempted to stop him from hitting the floor.

      Based on the unanimous affidavits of Defendants, Plaintiff posed a threatening figure.  (Doc. 11-2, p. 16, ¶ 8; Doc. 11-3, p. 22, ¶ 8; Doc. 11-2, p. 27-28, ¶ 6; Doc. 11-2, p. 32, ¶ 5; Doc. 11-2, p. 43, ¶¶ 5-6.)  Plaintiff was ready to fight anyone who might try to make him go to the sentencing hearing he had been ordered to attend.  A cursory look at the Defendants' affidavits, and it is clear that Plaintiff's cell was near the railing, whether he was inside or out. (Doc. 11-2, Stewart aff., pp. 16-17, ¶ 10; Doc. 11-2, pp. 22-23, ¶ 8; Doc. 11-2, p. 33, ¶ 7; Doc. 11-2, pp. 38-9, ¶ 9; Doc. 11-2, p. 44, ¶ 7.)  Following taser procedure, two officers caught Plaintiff to prevent injury in a fall. (Doc. 11-2, Stewart aff., p. 17, ¶ 11; Doc. 11-2, p. 23, ¶ 9; Doc. 11-2, p. 28, ¶ 7; Doc. 11-2, p. 33, ¶ 6; Doc. 11-2, p. 39, ¶ 10.)  The purpose of the tasing was to obtain compliance with the court's and the officers' orders given to Plaintiff with the lease threat of harm to Plaintiff and the officers. (Doc. 11-2, p. 17, ¶ 10; Doc. 11-2, p. 23, ¶ 8; Doc. 11-2, p. 28, ¶ 6; Doc. 11-2, p. 33, ¶ 7; Doc. 11-2, p. 39, ¶ 9; Doc. 11-2,. p. 44, ¶ 7.)

Such circumstances do not justify ignoring the fact the Plaintiff's injury was so *de minimis* as to require a mere band-aid for the pinprick on his arm.

II. **ALL EVIDENCE AND DOCUMENTATION SUBMITTED BY PLAINTIFF AND DEFENDANTS IN THIS CASE, EXCEPT THE BALD ASSERTION OF PLAINTIFF LATE IN THE FILINGS, ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT PLAINTIFF NEVER FILED OR ATTEMPTED TO FILE OR WAS HINDERED IN ANY WAY IN FILING WITH THE CHAMBERS COUNTY DETENTION FACILITY A GRIEVANCE OR COMPLAINT ABOUT THE NOVEMBER 2005 INCIDENT ALLEGED IN HIS COMPLAINT.**

Until his Answer to Defendants' Special Report, Plaintiff had never mentioned that he had tried to complain, file a Grievance, or request a Grievance with the Chambers County Detention Facility regarding the November 10, 2005. In that Answer, he made it clear that he thought the filing of a Grievance was futile. (Doc. No. 17 at p. 1.) Is it not a little suspicious that plaintiff waited until the Magistrate Judge granted summary judgment to Defendants on the ground of failure to exhaust administrative remedies before he asserted that he was denied the opportunity to file a Grievance. There no documentary evidence or witness testimony to support such a contention, except for the Plaintiff's own late and self-serving assertion. More than that, the assertion makes little sense because Plaintiff's Grievance would have been no threat to Major Stewart, the person he accuses of being the disposer of his attempt to file a Grievance. At worst, Major Stewart would have denied Plaintiff's Grievance based on the Officers' Incident Report on the November 10, 2005 incident.

Second, it makes little sense because of the variety of ways that Plaintiff could have used to circumvent the alleged conspiracy by Major Stewart to thwart Plaintiff's attempts to file a Grievance. Plaintiff had twelve days after the November 10, 2005 incident within which to conjure up a way to file a Grievance. It would not have been simple or easy for the Detention Facility to continue to have officers subjected to requests by Plaintiff to file a Grievance and keep it quiet. Plaintiff did not have to file a Grievance on an official form; he could have used any form of paper to file a Grievance. He

10

could have then filed the Grievance with a shift supervisor, who would have forwarded it to Lieutenant McCoy, the Grievance Coordinator. Yet, every officer and Lieutenant McCoy testify that no such request or attempt was made by Plaintiff. Assuming *aguendo* that every officer and Lieutenant McCoy was and is involved in the conspiracy to prevent the filing by Plaintiff of his Grievance, he could have mailed something to the Sheriff. However, assuming *arguendo* that the Sheriff is in on the conspiracy or that Administrator Stewart is in the habit of stealing inmate's mail if he suspects it might criticize him to the Sheriff, Plaintiff could have mailed something to the Sheriff from Donaldson Correctional Facility.

Notice that in Plaintiff's Objection to the May 23, 2008 Magistrate Judge's Recommendation, he alleges none of that, only that he was denied permission to send his Grievance to the Sheriff. (Doc. 26.) The closest he comes is when he alleges that he "asked Major Clay Stewart several times to file Grievances and to file a complaint with the Sheriff for their actions or abuse. Major Clay Stewart refused to do so and stated file your complaint when you get back to Donaldson." (Doc. 26 at 1.) But Major Stewart cannot deny an inmate's request to file a Grievance with the Sheriff. At any time, any inmate can send a letter to the Sheriff complaining about an aspect of the Jail and the Sheriff will talk with Major Stewart. And the right of the inmate to file a Grievance does not require that inmate to request permission to do so.

Even if this Court were to accept everything asserted by Plaintiff in his Objection as true, it still would not justify this Court ignoring the PLRA. If Plaintiff had filed a Grievance on a piece of paper and filed it with a shift supervisor who forwarded it to Lieutenant McCoy who then forwarded it to Major Stewart, and Major Stewart had destroyed that piece of paper, Plaintiff could have then appealed to the Sheriff once he did not hear any response from Major Stewart. By following the Grievance Procedure in spite of the alleged stone-walling of the Detention Facility staff and

11

Administrator, Plaintiff would have preserved his right to file this action, if he had filed a claim with the State Board of Adjustment, a point already argued by the Defendants in their Special Report.

Perhaps more importantly is the fact that Plaintiff has made an unsworn statement that he was prevented from filing a Grievance under the Chambers County Detention Facility Grievance Procedures. However, as explained below, his sole assertion, late and self-serving, with no supporting evidence or sensible explanation is not sufficient under the summary judgment standard as described above to create a genuine issue of material fact. Defendants explain below more thoroughly and in detail the problem with Plaintiff's Objection about filing a Grievance. However, the same analysis applies as in Scott v. Harris, supra. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 127 S.Ct. at 1776. In the same way, Plaintiff's unsworn assertion - late, unsupported, and nonsensical - should not be used to by this Court to say there is a genuine issue of material fact and that summary judgment is not appropriate. The same holds true for whether there exists a genuine issue of material fact regarding the use of excessive force.

III. **PLAINTIFF'S CLAIMS ARE DUE TO BE DENIED BECAUSE HE HAS NOT STATED A CONSTITUTIONAL VIOLATION WITHIN HIS COMPLAINT SUFFICIENT TO OVERCOME DEFENDANTS' ENTITLEMENT TO QUALIFIED IMMUNITY.**

In light of the fact that Plaintiff was belligerent, would not obey correction officers' orders, would not obey a judge's order to reappear for sentencing, was tased instead of being wrestled to the hard floor near a balcony rail by several correction officers, and suffered *de minimis* injury, Plaintiff has not alleged a constitutional violation, an essential element for a § 1983 claim. This is the first evidentiary requirement a § 1983 claimant must meet to overcome a summary judgment motion. Plaintiff has not met and cannot meet that burden. Swint v. Chambers County Com'n, 514 U.S. 35,

38, (1995) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987) (governmental officials are immune from suit for civil damages unless their conduct is unreasonable in light of clearly established law)). As explained in Defendants' Special Report,

> Even assuming that Plaintiff's allegations are true, he has not demonstrated in those allegations that the Defendants applied unconstitutionally excessive force against him and that they thereby denied him "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Based on Plaintiff's Complaint alone, it is obvious that the Defendants considered force necessary because the Plaintiff, in refusing to attend his sentencing hearing, violated the rules of the Jail and created a dangerous and combative environment. (Doc. 1, pp. 1-3; Doc. 11-2, pp. 16-17; Doc. 11-2, pp. 21-23.) The Defendants' affidavits show that Plaintiff, in refusing to attend his sentencing hearing, also used foul language, told the officers they would have to use force to get him to comply, was not clear in communicating what he thought was a "constitutional right," and presented the physical appearance that he was ready to fight any officer who tried to ensure his attendance at his sentencing hearing. (Doc. 11-2, pp. 14-48.) On its face and even accepting for the moment that his allegations are true, the Defendants are entitled to have the claims against them dismissed.
>
> Also, Defendants' affidavits establish that there was more to Plaintiff's actions than just verbal assertions of a right to waive his presence at his sentencing hearing. (Doc. 11-2, p. 16; Doc. 11-2, p. 22; Doc. 11-2, p. 38.) His attitude was clearly threatening to the corrections officers such that they considered use of the taser the only safe way to *safely* ensure that Plaintiff complied with the judge's order to have him attend the sentencing hearing and the officers' order for Plaintiff to get dressed to attend the hearing.

(Doc. 11-1, pp. 13-14.)

IV.  **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY BECAUSE NOTHING IN THEIR CONDUCT CROSSED A "BRIGHT LINE" CONTOUR OF CLEARLY ESTABLISHED CONSTITUTIONAL LAW.**

Even if Plaintiff had alleged a constitutional violation, the Defendant officers would not have known their conduct crossed a "bright line" contour of clearly established constitutional law. The Eleventh Circuit has not held that use of a taser is an obvious constitutional violation of an inmate's rights,[3] and the Magistrate Judge's July 2, 2008 Recommendation did not so state. Nor did that

---

[3] If a "violation should have been obvious to any objectively reasonable correctional officer," then qualified immunity may be unavailable to a correctional officer defendant. <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1274 (11th Cir. 2005).

Recommendation cite to a case that would put the Defendants in this case on notice that their actions violated Plaintiff's constitutional rights. In fact, the precedent would not put a reasonable officer on notice that use of a taser on a belligerent inmate who refuses to obey orders would amount to excessive force.

> We have previously held that in a "difficult, tense and uncertain situation" the use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force.

Zivojinovich v. Barner, 525 F.3d 1059, 1073 (11th Cir. 2008), citing Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004). Barner involved an unruly New Year's Even dance party patron at the Ritz-Carlton in Naples, Florida. While the patron was being escorted down stairs by two officers, he had to be tased more than once. Also, his father, Alex, who was following the officers and his son down the stairs had to be tased because he became involved in the struggle between his son and the two officers. Eventually Alex was again tased by two officers, each with a taser, because he was spitting blood on one of the two officers while he spoke after he had his nose broken by a third officer who had shown up during the struggle. The defendants in Barner were granted summary judgment on plaintiff's fourth amendment excessive force claim,[4] and the Eleventh Circuit Court of Appeals affirmed that judgment. The Barner opinion was issued April 23, 2008, over three years after the incident involved in Plaintiff's case, and would not have informed Defendants that their use of a taser on a recalcitrant inmate would cross a "bright line" contour of clearly established constitutional law.

Another Eleventh Circuit Fourth Amendment excessive force case is relevant to the question as to whether the Eleventh Circuit would consider the use by officers of a taser would cross a "bright line" contour of clearly established constitutional law.

---

[4] Other than Brown v. Thompson, discussed infra, and in Defendants' original Special Report and the Fourth Amendment Excessive Force cases, Defendants could not find any other relevant cases involving law enforcement use of a taser on an inmate.

> In the circumstances of this case, Reynolds's use of the taser gun to effectuate the arrest of Draper was reasonably proportionate to the difficult, tense and uncertain situation that Reynolds faced in this traffic stop, and did not constitute excessive force. From the time Draper met Reynolds at the back of the truck, Draper was hostile, belligerent, and uncooperative. No less than five times, Reynolds asked Draper to retrieve documents from the truck cab, and each time Draper refused to comply. Rather, Draper accused Reynolds of harassing him and blinding him with the flashlight. Draper used profanity, moved around and paced in agitation, and repeatedly yelled at Reynolds. Because Draper repeatedly refused to comply with Reynolds's verbal commands, starting with a verbal arrest command was not required in these particular factual circumstances. *More importantly, a verbal arrest command accompanied by attempted physical handcuffing, in these particular factual circumstances, may well have, or would likely have, escalated a tense and difficult situation into a serious physical struggle in which either Draper or Reynolds would be seriously hurt. Thus, there was a reasonable need for some use of force in this arrest.*
>
> Although being struck by a taser gun is an unpleasant experience, the amount of force Reynolds used-a single use of the taser gun causing a one-time shocking-was reasonably proportionate to the need for force and did not inflict any serious injury. Indeed, the police video shows that Draper was standing up, handcuffed, and coherent shortly after the taser gun stunned and calmed him. The single use of the taser gun may well have prevented a physical struggle and serious harm to either Draper or Reynolds. Under the "totality of the circumstances," Reynolds's use of the taser gun did not constitute excessive force, and Reynolds did not violate Draper's constitutional rights in this arrest.

Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (emphasis added).  While being handcuffed, Draper was held down on his stomach by a back-up officer who had placed a knee in his back, causing the taser needle to push into the skin of his chest even further, with the quarter-inch-size-wound later becoming infected.  The Eleventh Circuit Court of Appeals affirmed the District Court's summary judgment in favor of the defendant officer.  In the same way, in this case Administrator Stewart decided it was safer to tase Plaintiff than to wrestle him in submission.  Such a practice had proved to be the safest way to deal with an uncooperative inmate since the introduction of tasers to the Chambers County Detention Facility.  The Draper opinion was issued May 17, 2004 and would not have informed Defendants that their use of a taser on a recalcitrant inmate would cross a "bright line" contour of clearly established constitutional law.

In <u>Brown v. Thompson</u>, 159 Fed. Appx. 119 (unpub'd op.) (11th Cir. 2005), dismissal of the plaintiff's complaint was reversed on appeal because the corrections officers "repeatedly stunned Brown with a stun gun to prod him to obey orders." <u>Id.</u> at 119. <u>Brown</u> is distinguishable from the case at bar because the officers in that case also "knew that Brown was unable to comply with their orders." <u>Id..</u> at 119. Also, the <u>Brown</u> case was not reported until December 14, 2005, over a month after the incident alleged by Plaintiff in the case at bar. Therefore, even if the facts of Brown were materially similar to the facts of the case at bar, which they are not, the Defendants in this case could not have used that precedent to inform themselves that such conduct is unconstitutional, particularly when <u>Brown</u>, supra, was at the Motion to Dismiss stage. <u>Brown</u> is also an unpublished opinion.

Therefore, even if the Magistrate Judge were correct as to the issues discussed above, Defendants would still be entitled to qualified immunity because there is no way that any of the above precedent, all of which were issued after the event in this case, could inform the Defendant officers that their conduct in using the taser crossed a "bright line" contour of clearly established constitutional law. Therefore, summary judgment for the Defendants is called for.

V.   **CONCLUSION.**

Plaintiff has sought to attack the only point he could have attacked for his claim to survive the scrutiny required by the PLRA, and that is whether he could have filed a Grievance and exhausted his administrative remedies. The problem is the credibility of Plaintiff's assertion. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 127 S.Ct. at 1776. Plaintiff's assertion that he could not file a Grievance because the Detention Facility Administrator would not let him after he requested to do so, is simply not credible when compared to the overwhelming evidence contrary to Plaintiff's

assertion.  Consider also the timing of Plaintiff's assertion – after the Magistrate Judge had recommended summary judgment for Defendants because of the lack of exhaustion by Plaintiff.  Even if his allegations were accepted as true, Plaintiff could still have filed a complaint or Grievance with the Sheriff's Office, even after he left for Donaldson; opposition by the Administrator would have been futile, if Plaintiff had followed the Grievance Procedure.  Therefore, Plaintiff's claims are "so contradicted by the record, so that no reasonable jury could believe it."  127 S.Ct. 1776.

Plaintiff's injury was *de minimis*, requiring a band-aid for a pinprick on his arm.  Nor do the circumstances of the "injury" turn it into an "open and obvious" constitutional violation that no reasonable officer would have done.   Even if Plaintiff had complied with the PLRA by exhausting Plaintiff's administrative remedies, which the overwhelming evidence shows that he did not, and even if he had received a serious injury, which he clearly did not, and even if he had stated a constitutional violation, which he has not, "'case law, in factual terms, has not staked out a bright line'" regarding the use of a taser upon a recalcitrant inmate, and "'qualified immunity almost always protects the defendant'" in such a situation.  Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994) (reversing denial of qualified immunity as to some defendants) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1992)).

Therefore, Defendants respectfully request that the Magistrate Judge reverse the Recommendation of July 2, 2008 based on one, two, or all of the above grounds, or, in the alternative, Defendants request that the District Court Judge not adopt the Magistrate Judge's Recommendation and grant summary judgment to the Defendants.

Respectfully submitted this 28th day of July 2008.

        **s/Winthrop E. Johnson**
        WINTHROP E. JOHNSON, Bar No. JOH086
        Attorney for Defendants Clay Stewart
        and John Carmichael
        WEBB & ELEY, P.C.
        7475 Halcyon Pointe Drive (36117)
        Post Office Box 240909
        Montgomery, Alabama  36124
        Telephone:  (334) 262-1850
        Fax:  (334) 262-1889
        E-mail:  wjohnson@webbeley.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 28th day of July, 2008, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Christopher McCullough, #174 909
W.E. Donaldson Correctional Facility
100 Warrior Lane
Bessemer, AL  35203

        **s/Winthrop E. Johnson**
        OF COUNSEL