# EXHIBIT D

# Administrator Clay Stewart's Affidavit

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MCCULLOUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:05-CV-1163-F |
| ) | (WO) |
| CHAMBERS COUNTY SHERIFF'S ) | |
| DEPARTMENT, et al., ) | |
| ) | |
| Defendants. ) | |

### AFFIDAVIT OF CLAY STEWART

STATE OF ALABAMA    )
                    )
COUNTY OF CHAMBERS  )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Clay Stewart, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.  My name is Clay Stewart. I am over the age of nineteen and competent to make this affidavit. I have been employed by the Chambers County Sheriff's Department since 1995. On October 31, 2005, I became the Jail Administrator of the Chambers County Jail. Before I began my job as Jail Administrator for the Chambers County Facility, I studied the Chambers County Inmate Handbook and the Chambers County Detention Facility Policy Procedures Directives, studying the Grievance Procedure in particular. One of my goals as a new Administrator was to learn from the inmates themselves about what problems might exist within the staff which I was inheriting and deal with those problems early in my tenure.

2. I am familiar with the Plaintiff Christopher McCullough due to his incarceration in the Chambers County Detention Facility. I have also read Mr. McCullough's Objections to the Magistrate Judge's original Report and Recommendations filed with this Court June 9, 2008.

3. I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4. I certify and state that the documents provided to the Court which are attached to the Defendants' Objections to the Magistrate Judge's Report and Recommendation are true and correct copies of inmate records and of the official Directives and Inmate Handbook of the Chambers County Detention Facility, kept at the Chambers County Jail in the regular course of business. I am the Custodian of these Records.

5. Christopher McCullough was transferred from William E. Donaldson State Correctional Facility to the Chambers County Detention Facility on November 4, 2005, for trial for Burglary and Theft. He was tried and convicted on November 9, 2005 of Burglary First Degree and Theft First Degree. He was scheduled for a Sentencing Hearing on November 10, 2005, and on November 22, 2005, upon the instruction of Major Melton of the Sheriff's Office, he was transferred back to William E. Donaldson Correctional Facility on November 22, 2005. A deputy from the Sheriff's Office performs this transport; this Facility does not perform or schedule such transport.

6. The Chambers County Detention Facility Policy and Procedures Directives, 18 June 1991, state our policy regarding the filing of Grievances by inmates at the Chambers County Detention Facility. First, all personnel with direct supervision over

inmates must receive training on the Facility's Grievance Procedure. "All employees who work in direct continuing contact with inmates will receive training that covers, at a minimum: . . . Grievance and Disciplinary procedures." Chambers County Policy and Procedures Directives No. A-110. Second, all inmates receive a handbook explaining that they have the right to file a Grievance with the Chambers County Detention Facility. That Handbook states:

> Section 17: Grievances
>
> 17.1   If you have a grievance, you can report it on an inmate grievance form. Only one inmate signature is allowed per grievance.
>
> 17.2   Your grievance will be investigated and answered, in writing, within 72 hours of the time [sic] is received, excluding weekends and holidays. Grievances are first answered by the shift supervisor. If more than 72 hours is required to investigate the grievance, the inmate is notified in writing. If the grievance concerns an emergency when the inmate [sic] welfare is threatened, it is answered as soon as possible.
>
> 17.3   If you are not satisfied with the first answer to your grievance, you may send a grievance to the Administrator.
>
> 17.4   We will not take any negative action against you because you file a grievance.

7. It is the policy of the Chambers County Detention Facility to permit Grievances in writing and otherwise. However, a written Grievance provides the inmate the opportunity to obtain an answer in writing and to appeal if he or she does not agree with the answer to the Grievance. "It is the policy of the Chambers County Detention Facility that inmates are permitted to submit grievances to the Detention Facility Administrator and that each grievance will be acted upon." Chambers County Policy and Procedures Directive No. F-102. An explanation of the Facility's procedure follows.

1. An inmate wishing to file a grievance will be provided with an Inmate Grievance Form upon request.

2. Completed Grievance Forms will be delivered promptly to the Shift Supervisor who will either resolve the grievance or forward it to the Jail Administrator. The Jail Administrator reserves the final decision on inmate grievances.

3. The decision of the Detention Facility Administrator may be appealed by the inmate in writing to the Sheriff of Chambers County within seventy-two (72) hours of receipt of the grievance decision.

4. Inmates will be advised of their right to file a grievance at the time of admission to the jail.

8. I handle many Grievances during any three-week period, and the period in November 2005, when Plaintiff was incarcerated at the Chambers County Detention Facility, was no different. During November of 2005, I processed 8 Grievances from 5 different inmates, any one of which could have pursued to completion the administrative process necessary for a Grievance to be filed and appealed. We received these Grievances from other inmates during the month of November 2005, and true and correct copies of a sampling of such are attached to this Affidavit as part of Exhibit 2. The names on those Grievances have been masked for the sake of inmates' privacy, and none of them were filed by Plaintiff in this case. They demonstrate the receipt of Grievances, even Grievances threatening a lawsuit, by the Chambers County Detention Facility and the Sheriff's Office and how I, Lieutenant McCoy (formerly Lieutenant Leverett), and the Sheriff respond to such Grievances.

9. On the date that Plaintiff was booked into the Chambers County Detention Facility for his trial on Burglary and Theft charges, November 4, 2005, I had been the Chambers County Detention Facility's Administrator for five days. I remember only one other use of legitimate force by the Chambers County Detention Facility officers before the incident with Plaintiff on November 10, 2005. At that time, I was especially

conscientious that the Detention Facility staff perform its duties according to the policies, rules and procedures of the Chambers County Detention Facility, and those policies, rules and procedures include the right of inmates to file a Grievance at any time about the conditions of confinement or their treatment by my staff or by me.

10. The Inmate Handbook and the Policies and Procedures Directives instruct an inmate with a grievance or complaint to request a "Grievance Form." If an inmate cannot obtain a Grievance Form, that inmate may simply write the words "Grievance Form" at the top of a piece of paper, napkin, or any other writing material and submit it, and I will consider that a valid Grievance. An inmate with an oral complaint will be given a Grievance Form. There have been times when an inmate has contacted his or her family or the Sheriff's Office directly about a grievance before notifying me or my staff about that grievance. When notified, and even though it is not a duty in my job description, I or a member of my staff personally delivers the Grievance Form to that inmate so that inmate could file a Grievance. Included in Exhibit 2 to this Affidavit are examples of Grievances placed on something other than the official form.

11. It is not only the policy of this Facility that each and every inmate has a right to file a Grievance about the conditions or treatment in the Chambers County Detention Facility, but it is also my conviction that a well-administered and liberal Grievance system will allow a jail to run more smoothly because inmates, while not obtaining every request, know their concerns are being heard. And with a legitimate appeal system, the inmates know that more than one person is hearing their concerns. If the Sheriff receives a complaint or Grievance from the Plaintiff complaining of the November 10, 2005 incident, the Sheriff's normal practice is to call me to his Office and

discuss a Grievance or complaint about me and my administration of the Chambers County Detention Facility, and I openly discuss my policies, practices, and administration of the Facility with the Sheriff when an inmate has a Grievance or complaint about me. I do not answer every Grievance with an affirmative answer to the inmate's request, but I do give every Grievance a response of some kind. Had Plaintiff filed or requested to file a Grievance about the November 10, 2005 incident with the Chambers County Detention Facility, I would have had no problem responding to whatever request he may have made. Bottom line: It is not in the interest of the Chambers County Detention Facility or my interest to hinder or prohibit an inmate like the Plaintiff from filing a Grievance. In fact, it is my opinion that it is against the interests of this Administrator and this Facility to prohibit or hinder such Grievances from being filed. At no time did I or any of my staff at the Chambers County Detention Facility deny, obstruct, or in any way prevent Plaintiff from having the opportunity to file a Grievance about what occurred during his incarceration at the Chambers County Detention Facility in November of 2005. The first time I heard from Plaintiff of a complaint about his being tased was when I received service of this lawsuit.

12. Had the Plaintiff requested a Grievance Form, he would have been given one. But even if he had not, he could have written a Grievance on any form of paper, including a napkin or scrap paper, and it would have been received, either by this office or the Sheriff's Office. And if somehow Plaintiff had not been able to file a Grievance with this Facility, he could have sent a letter to the Sheriff, who would have contacted me about the complaint. If after being transported to Donaldson Correctional Facility, Plaintiff had sent his Grievance to this Facility or the Sheriff by mail, it would have been

received, responded to, and filed in his Jail File. Neither the policy of the Detention Facility, the Policy and Directives Directives, nor my policy require an inmate to request permission to file a Grievance; an inmate's right to file a Grievance already exists in the Chambers County Detention Facility Policy and Procedure Directives. An inmate need only file a Grievance, either on a Grievance Form or other paper, and it will be received. Not only is it untrue that the Plaintiff was refused permission to file a Grievance, but it makes no sense.

13. In fact, the entire assertion by the Plaintiff makes no sense. If an inmate has a legitimate complaint of an injury and files a Grievance, I risk setting up the Facility, the Sheriff's Office, and myself for a lawsuit should something happen to that inmate before medical help can arrive. Had Plaintiff filed his Grievance about the November 10, 2005 incident, I would have answered by reference to the Incident Report filed by the Officers involved. I had confidence in the officers involved in the incident and their ability to prepare the Report. Had I denied Plaintiff's Grievance, he could have filed an appeal to the Sheriff.

14. The Plaintiff did not file or request to file any type of grievance, formal or informal, oral or written, with the Chambers County Detention Facility, before or after his transfer back to Donaldson Correctional Facility on November 22, 2005. In fact, the first I knew that Plaintiff wanted the November 10, 2005 incident formally reviewed was when I received a copy of the lawsuit filed by Plaintiff. As a result of reviewing Plaintiff's Objections to the Magistrate Judge's first Report and Recommendation and the Plaintiff's entire inmate file (Exhibit 1), I instituted an investigation by Investigator Jason Fuller, who discovered no member of the Chambers County Detention Facility

interviewed had received, or knew of, or could remember Plaintiff filing any type of Grievance or even requesting a Grievance Form in order to file one about the November 10, 2005 incident of which he complains to this Court. Investigator Fuller's Report is attached to this Affidavit as Exhibit 3. At no time have I or any member of my staff done anything to intimidate Plaintiff into thinking that he could not file a Grievance over that incident or any other incident at the Chambers County Detention Facility, nor have I or any member of my staff implied or communicated to Plaintiff that he would receive retaliation for filing a Grievance with this Facility. I also reviewed the mail logs for the short time (less than three weeks) Plaintiff was at the Chambers County Detention Facility in November 2005, the period of his incarceration during which the incident alleged occurred, and there are no entries for any type of outgoing mail from Plaintiff to the Sheriff or anyone else after November 10, 2005, the date of the alleged incident. Even if there were such a record and even if I had access to inmates' outgoing mail, I would not steal inmate mail in order to prevent a complaint from reaching the Sheriff. In fact, there are only two entries on the Plaintiff's Mail Log of outgoing mail from Plaintiff, and those occurred on November 4, 2005, the date he was booked into the facility. Logically, those entries had nothing to do with the November 10, 2005 incident. True and correct copies of those mail logs are attached to this Affidavit as Exhibit 4. If I had intercepted Plaintiff's mail, which I did not, such an action would have been recorded in the Mail Log.

15. I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.